[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 23, 2004
THOMAS  K. KAHN
CLERK

Nos. 03-14313, 03-14314

D. C. Docket Nos. 03-00111–CR-CG-001
and 03-00079-CR-1-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM COPELAND,
a.k.a. William Joseph Creed,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Alabama

_____

**(August 23, 2004)**

Before DUBINA, CARNES and CUDAHY[*], Circuit Judges.

CUDAHY, Circuit Judge:

_____

[*]Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit,
sitting by designation.

The defendant, William Lee Copeland, was charged in a four-count indictment with conspiracy to distribute "crack" cocaine (the drug charge).[1] He pleaded guilty to the drug charge in a plea agreement in which the government agreed not to prosecute him for matters which he related to the government. The plea agreement also contained Copeland's waiver of the right to appeal his sentence in the drug case. Copeland was subsequently charged in a one-count indictment with carrying a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (the gun charge). Copeland claimed that this gun charge was barred by the plea agreement for the drug charge, but the district court ruled that the plea agreement had not been breached. The defendant now appeals.

## I.

William Lee Copeland was a busy criminal. The facts underlying his three convictions are undisputed.

On August 14, 2002, an officer of the Mobile Police Department was looking for Copeland pursuant to an outstanding arrest warrant for domestic violence. When he was located and patted down, the officer found a pistol. At the time of his arrest, he had a 1989 felony conviction in Ohio for Trafficking in

---

[1]Copeland was also charged as a felon in possession of a firearm, in violation of 18 U.S.C. § 922 (g)(1), but this charge is not relevant to the issue in this case.

Cocaine and Carrying a Concealed Weapon. In District Court Case No. 02-00160 (the felon-in-possession case), Copeland was charged with one count of being a felon in illegal possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He pleaded guilty to this charge pursuant to a written plea agreement with the United States. This conviction was consolidated with two other charges for sentencing but is not at issue in this appeal.

On August 16, 2002, a confidential informant (CI) told the Drug Enforcement Administration (DEA) that William Copeland distributed crack cocaine and marijuana in Mobile, Alabama. Under DEA supervision, the CI bought crack from Copeland on two occasions. In District Court Case 03-00079 (the drug case), Copeland was charged in four counts with conspiracy to possess with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 846, and with possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). In one of two consolidated appeals, Appeal No. 03-14314, Copeland is now seeking specific performance of his plea agreement in the drug case.

The facts underlying District Court case 03-00111 (the gun charge), involving carrying a firearm in connection with a drug trafficking offense in violation of 18 U.S.C. § 924(c), are not directly related to the facts supporting the

3

drug charge. On January 4, 2003, Mobile police officers bought drugs from a woman in a hotel room in Mobile. When the officers returned to the hotel room to arrest the woman, they found Copeland there. He threw a plastic bag containing seven rocks of crack to the floor. The officers searched Copeland and found a plastic bag containing marijuana that was packaged for sale. They also found Copeland in possession of the currency that had been used by the officers to pay the woman for the drugs. Copeland was arrested and taken to jail. Upon arriving at the jail, he disclosed that he was carrying a pistol. He was convicted of the gun charge and now seeks to set aside that conviction in the other of the two consolidated appeals, Appeal No. 03-14313.

On May 12, 2003, Copeland pleaded guilty to the conspiracy charge in the drug case pursuant to a written plea agreement and conceded that he was responsible for 136.7 grams of crack cocaine. Paragraph 16 of the plea agreement in the drug case stated in pertinent part that Copeland

> will not be tried on any other violations of federal criminal law in the Southern District of Alabama for his involvement prior to the date of this agreement (for matters he has related to the United States pursuant to this agreement only). Further, except for the charge to which the defendant enters his guilty plea, the defendant will not be charged in federal court in the Southern District of Alabama with any other criminal acts resulting from information provided by him to the government pursuant to this agreement as long as all information he provides is truthful and complete.

4

(Copeland's Br. at 5-6.)  The plea agreement also contained a waiver of Copeland's right to appeal his sentence in the drug case but reserved his right to contest certain specified exceptions not relevant here.  Copeland signed a "proffer" agreement on the same day he signed the plea agreement, but despite his counsel's several attempts to set up a debriefing session, the government did not return her voice mail messages and did not debrief Copeland before bringing the gun charge.

On May 19, 2003, Copeland's counsel filed a motion in the district court requesting an anticipatory breach hearing, alleging that the government was planning on charging Copeland with a violation of 18 U.S.C. § 924(c) in breach of paragraph 16 of his plea agreement in the drug case.  The district court conducted a hearing on May 20, 2003, during which the assistant U.S. Attorney stated that it was the intention of the United States at the time the plea agreement in the drug case was entered to exclude the intended gun charge from the language of paragraph 16.  The district court found that the breach issue was not ripe and postponed ruling on it until after the gun charge had been formally filed.  The district court also postponed Copeland's plea hearing in the drug case until after the gun charge was filed, so that the two cases could be consolidated for plea and sentencing, which would allow Copeland to avoid qualifying as a career offender.

Immediately prior to entry of Copeland's guilty pleas in the drug case and the gun case, the district court denied the motion for anticipatory breach and found that the United States had not violated the plea agreement in the drug case. Then Copeland entered a blind plea of guilty to the gun charge at the same time as his guilty plea in the drug case, reserving his right to appeal the district court's ruling on the breach issue. On August 20, 2003, Copeland was sentenced to a total of 200 months' imprisonment in all three cases: 120 months in the felon-in-possession case; 140 months in the drug case, to run concurrently; and 60 months in the gun case, to run consecutively. A mandatory special assessment of $100 in each case was also imposed.

Copeland now appeals the district court's finding that the United States did not breach his plea agreement in the drug case, arguing that there was a breach when the United States charged him with a violation of 18 U.S.C. § 924(c) without first giving him a chance to be debriefed pursuant to that plea agreement and to admit to the criminal conduct underlying the gun charge. Copeland argues that the district court interpreted the language of his plea agreement in the drafter's favor instead of in his favor as required by well-established law. He also argues that the sentence-appeal waiver in his plea agreement does not bar his appeal here, because he is alleging a breach of the plea agreement containing the waiver provision and

6

is not appealing any aspect of his sentence in the drug case. Copeland is seeking specific performance of the plea agreement, which in his view would require dismissal of the gun charge.

## II.

As an appeal of a final judgment of the district court in a criminal case, we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Whether a defendant effectively (knowingly and voluntarily) waived his right to appeal his sentence is a question of law that we review de novo. *United States v. Benitez-Zapata*, 131 F.3d 1444, 1446 (11th Cir. 1997). Similarly, whether the government has breached a plea agreement when the defendant preserved his objection in district court, as did Copeland, is reviewed de novo. *United States v. Mahique*, 150 F.3d 1330, 1332 (11th Cir. 1998).

## III.

The government argues at some length that Copeland "waived his right to appeal anything connected with [the drug] case except for the three exceptions listed in paragraph 22 of the waiver of appeal," none of which apply.[2] (Gov't Br.

---

[2]Paragraph 20 of the plea agreement:

The defendant acknowledges that he is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his sentence. In exchange for the recommendations made by the United States in this agreement, the defendant knowingly waives the right to appeal any sentence imposed in the instant case,

7

at 18-19.)  This contention is quite meritless in view of the controlling language of paragraph 20 that "the defendant knowingly waives the right to appeal *any sentence imposed in the instant case* [the drug case], except with regard to those rights identified in paragraph 21 below."  (Copeland's Br. at 6-7 (emphasis added).)  The waiver, therefore, applies only to the sentence imposed in the drug case, not, as the government contends, to "anything connected with [the drug] case"—a considerably more expansive category.  (Gov't. Br. at 18.)  The defendant has therefore not waived the right to appeal the matters presented to us, and we shall address them on the merits.

## IV.

except with regard to those rights identified in paragraph 21 below.

Paragraph 21:

With the limited exceptions noted below, the defendant also waives his right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under Title 18, United States Code, Section 2255.

Paragraph 22:

The defendant reserves the right to contest in any appeal or post-conviction proceeding any of the following:

a.  Any punishment imposed in excess of the statutory maximum.
b.  Any punishment that constitutes an upward departure from the guideline range; or
c.  A claim of ineffective assistance of counsel.

(Copeland's Br. at 6-7.)

8

Copeland contends that the government breached the plea agreement in the drug case by bringing charges in the gun case under 18 U.S.C. § 924(c). When guilty pleas rest "in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Thus, in determining whether the government has breached a plea agreement, we must first determine the scope of the government's promises. The district court's factual findings on the scope of the agreement will be set aside only if they are clearly erroneous. *Raulerson v. United States*, 901 F.2d 1009, 1012 (11th Cir. 1990).

In determining the meaning of any disputed terms in an agreement, the court must apply an objective standard and "must decide whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea." *In re Arnett*, 804 F.2d 1200, 1202-03 (11th Cir. 1986) (citations omitted). In interpreting a plea agreement, we do not accept a "hyper-technical reading of the written agreement" or "a rigidly literal approach in the construction of the language." *United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990). The "written agreement should be viewed against the background of the negotiations and should not be interpreted to 'directly

contradic[t] [an] oral understanding.'" *Id*. "Only where the language of the agreement is ambiguous, or where government overreaching is alleged does the court consider parol evidence . . . ." *Raulerson*, 901 F.2d at 1012 (citation omitted). When a plea agreement is ambiguous, it "must be read against the government." *Id.*; *see also United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986) ("[B]oth constitutional and supervisory concerns require holding the government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements."). The rationale for this approach to interpretation is that a plea agreement must be construed in light of the fact that it constitutes a waiver of 'substantial constitutional rights' requiring that the defendant be adequately warned of the consequences of the plea." *Jefferies,* 908 F.2d at 1523.

Thus, our examination requires a two-step process. First, is the language ambiguous, or not? If it is, we will consider extrinsic evidence of the parties' intent in arriving at an interpretation of the agreement's language and will rely on the above-mentioned standards of interpretation; otherwise, we are limited to the unambiguous meaning of the language in the agreement. Second, given our interpretation of the language, we must decide whether to enforce the agreement, keeping in mind that "the validity of a bargained guilty plea depends finally on the

10

voluntariness and intelligence with which the defendant—and not his counsel—enters the bargained plea." *United States v. Harvey*, 791 F.2d 294, 301 (4th Cir. 1986).

Although the district court might have been clearer, both parties agree that it found the language of the plea agreement ambiguous with respect to whether the government intended that the potential gun charge not be barred. The court said that the language "could certainly have been made clearer by simply saying "except for a 924(c) charge which will be brought." But the court went on to hold that "I do think that the language as is written, although it's not absolutely clear, does not prohibit this new charge, and I so hold."[3] This holding was apparently based on an interpretation of "pursuant to the plea agreement" as necessitating debriefing *prior to signing the plea agreement*. Since as of May 12 when Copeland signed the plea agreement in the drug case he had not given the

---

[3]The district court clarified its ruling as follows:

Well, I think the record adequately reflects my ruling in that case. But if you need a clarification, it's for not just the fact that he hasn't been debriefed specifically pursuant to the plea agreement. But it's also because he has made no statement whatsoever, from my understanding, about this gun in connection with any statements he may have made in connection with [the drug case]. In other words, there's no way that he could have previously related the gun situation to the government in any statements that he may have made in [the drug case], whether he was specifically debriefed concerning this plea agreement or not. My understanding about that's correct; right?

(Trans. May 22, 2003, at 22.)

11

government any information, the district court found that the plea agreement did not bar the bringing of the gun charge. (Trans. May 22, 2003, at 7-8; *see also id.* at 6 ("At the time the agreement was made, he had not related anything to the United States."); *id.* at 22 ("[T]here's no way he could have *previously related* the gun situation to the government in any statements that he may have made in [the drug case], whether he was specifically debriefed or not.") (emphasis added).) This also provides an explanation of why the district court's ruling was not influenced by the fact that the government already knew about the information underlying the gun charge,[4] and why the district court did not address whether Copeland was legally entitled to an opportunity to be debriefed about the conduct relevant to the gun charge before it was brought. Similarly, it would have been unnecessary under this interpretation of the language of the agreement to hold a hearing to determine whether Copeland understood (as he claims) that he was so entitled, or whether (as the government claims) all parties were aware that the gun charge was in the works and that, since the government was already aware of it, a

---

[4]The district court commented:

Well, the problem is you signed this agreement on May the 12th and *there had been no debriefing at that time.* And apparently, from what I understand, that there were discussions about this charge that was going to be filed and that in fact has been filed now. And so that would not change my ruling.

(Trans. May 22, 2003 at 7-8 (emphasis added).)

debriefing wherein Copeland mentioned the conduct would not have protected him against the charge.

First, we note that "pursuant to" does not mean "prior to," and the phrase "pursuant to" in paragraph 16 of the agreement is not modified by the earlier language, "prior to the date of this agreement." The district court's apparent interpretation of the plea agreement to hinge immunization of the gun charge on Copeland's provision of information prior to signing the agreement is not only illogical, it is inaccurate. "Pursuant to" means "following upon, consequent and conformable to; in accordance with." Oxford English Dictionary (2d ed. 1989). To take advantage of this provision, Copeland was not required to impart information about the gun charge prior to signing the plea agreement in the drug case. It thus becomes important to resolve whether Copeland was legally entitled to be debriefed in accordance with his plea agreement before he was charged with the gun charge.

In this respect, we conclude that the agreement suffers not from ambiguity in the usual sense but from the omission of language to specifically address Copeland's situation. The agreement does not specifically mention a requirement that Copeland be given an opportunity to be debriefed before the gun charge would be brought. It also fails to mention anything about the timing or contents of

13

any debriefing. Moreover, it is not clear whether the information gained during a debriefing has to be "new" information in order to allow a charge to be avoided. Copeland argues that the language of the plea agreement entitles him to an opportunity to be debriefed before other charges are brought, citing arguably analogous decisions from other circuits. *See United States v. Ringling*, 988 F.2d 504, 505 (4th Cir. 1993) (holding that government was required to debrief defendant prior to sentencing where plea agreement promised that the government "will make known to the Court at the time of sentencing the full nature and cooperation, including whether the Government considers the Defendant to have substantially assisted authorities"); *United States v. Laday*, 56 F.3d 24, 26 (5th Cir. 1995) (holding that language similar to plea agreement in *Ringling* similarly obliged government to interview defendant, even if government believed that "any assistance [defendant] might offer [was] insubstantial"). The government implicitly argues, with respect to the right to a debriefing, that the parties intended to contract around any legal requirement to provide an opportunity to debrief. The government contends that, when the plea agreement was executed, it already knew about the conduct underlying the gun charge, the charge was already in the works and both sides were aware that the gun charge would be brought. As support for its implicit argument, the government claims that debriefing would not have

14

helped Copeland because the information would not have been "new" to the government, as is arguably required by the terms of the agreement. (Gov't Br. at 23-24.)

There is nothing in the language of the agreement requiring that the information provided by Copeland be "new," and at first glance, the case law on this point seems to support Copeland's argument. In *Laday*, the defendant had no relevant information to provide about other crimes committed by him or others. In *Ringling*, the defendant was not debriefed prior to sentencing, so the government was consequently unable to inform the sentencing court about the nature and extent of the defendant's cooperation. When the DEA agent assigned to Ringling's case followed up on leads implicating others provided by the defendant's post-sentencing letter, they turned out to be of no value. In both cases, the government deemed it a waste of time to formally debrief the defendant because there was no useful information to be obtained. And in both cases, the courts held that the plea agreements promised an opportunity to be debriefed, regardless whether the information would be helpful. In fact, the Fifth Circuit has held that, if the government is already aware that the defendant has no useful information to impart at the time the plea agreement is signed, the government cannot avoid its obligations under the terms of the plea agreement on the grounds

that debriefing would be pointless. *Laday*, 56 F.3d at 26. A direct benefit to a defendant is undeniably at stake in being debriefed and cooperating with the government, when such cooperation could lead to a reduction in sentence (or, possibly, immunization against charges for other crimes). The conduct of the government might also be construed as supporting Copeland's position, since the government failed to return several telephone calls from defense counsel to set up a debriefing session after the execution of the plea agreement in the drug case—if the provision of information already known to the government would not bar the gun charge, why did the government apparently avoid debriefing Copeland?

However, *Laday* and *Ringling* can be distinguished from the present situation. In both *Laday* and *Ringling*, the government had promised to convey to a sentencing judge the nature and extent of the defendant's cooperation, so that he might qualify for a sentencing reduction based on his cooperation. Without debriefing the defendants, the government was held to have been unable to fulfill that promise. Here, the government's promise was essentially that it would immunize Copeland with respect to any information about other crimes that might implicate him. In both *Laday* and *Ringling*, as well as in the present case, the government's goal was presumably to obtain information assisting in the prosecution of others. But a reduction in sentence in exchange for cooperation is

16

much more clearly intended as a boon to defendants than is a promise to immunize defendants from charges based on their own proffers. Being immunized against the provision of incriminating information unknown to the government merely keeps matters in status quo. If there were no debriefing, the government would presumably not have the information on which to base additional charges. But in *Laday* and *Ringling*, the denial of a chance to demonstrate cooperation means that the defendant would lose a promised opportunity for a benefit.

Although we are supposed to resolve imprecisions in the plea agreement against the government, we are also supposed to take into account the backdrop to the parties' negotiations. And on this record, it is unclear whether Copeland's information had to be "new" in order to immunize him against the gun charge. The government stated in Copeland's anticipatory breach hearing that its intention at the time the plea agreement in the drug case was entered into was that the gun charge would be excluded from the language of paragraph 16. Presumably, if all parties shared the government's ostensible intention, a timely debriefing would have had no impact with respect to the gun charge. But the government neglected to include any language in the plea agreement to reflect its alleged intention, and without additional information, we cannot simply fill the gap left by the government with the language it should have included. In the end, the resolution

17

of this question comes down to whether Copeland *reasonably* understood at the time he signed his plea agreement that he could be immunized against the gun charge by a subsequent proffer of information, or whether the gun charge was going to be brought regardless of any post-agreement opportunity for debriefing.[5]

## V.

The district court erred in finding that the language of the plea agreement required Copeland to provide information about the gun charge prior to signing the plea agreement. On remand, the district court should, in light of this opinion, determine whether Copeland reasonably understood the government's stated intention with respect to the gun charge, or whether he reasonably understood the government to be promising him an opportunity to be debriefed and to thereby immunize himself against the imminent gun charge.[6] The district court may conduct a hearing and consider evidence extrinsic to the written agreement, if appropriate.

---

[5]It seems logical that the purpose of immunization would be to facilitate a defendant's disclosure of misdeeds, either his own or those of others, and that this purpose would not be furthered by immunizing previously known infractions. But this does not necessarily establish Copeland's reasonable understanding of the situation.

[6]*Cf. Harvey*, 791 F.2d at 303 (finding that where disputed provision of plea agreement was ambiguous and evidence showed "honest conflict of understandings," agreement must be interpreted to mean what defendant reasonably thought it did).

The judgment is VACATED and REMANDED for further proceedings in accordance with this opinion.