[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 15, 2005
THOMAS K. KAHN
CLERK

No. 05-11111
Non-Argument Calendar

_____

D. C. Docket No. 04-00113-CR-CB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FITZGERALD LAMAR WRIGHT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(November 15, 2005)

Before MARCUS, WILSON and FAY, Circuit Judges.

PER CURIAM:

Fitzgerald Lamar Wright appeals his conviction for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. On appeal, Wright argues that he should be permitted to withdraw his guilty plea because of a Rule 11 violation and because the government breached the plea agreement by failing to move for a one-point acceptance of responsibility reduction at sentencing. For the reasons stated more fully below, we affirm.

Proceedings against Wright began when an FBI investigation led to a criminal complaint alleging that Wright had admitted selling drugs to someone known as James Williams on four or five occasions while Wright was on federal supervised release. An indictment later charged Wright with one count of conspiracy to possess with intent to distribute cocaine and one count of possession with intent to distribute cocaine, violations of 21 U.S.C. §§ 846 and 841(a)(1)(B), respectively. On the first day of jury selection, Wright agreed to a "factual resume," admitted to the conspiracy charge in the indictment, and signed a plea agreement. The agreed-upon facts stated that Wright, on three occasions, sold cocaine to Williams and approximately one kilogram of cocaine was seized from a location associated with Wright. Wright admitted that the government would be able to prove his involvement with one and a half kilograms of cocaine, and the resume was signed by both Wright and his attorney.

The plea agreement indicated that Wright had been informed of the elements of the charges, understood the rights he was waiving, believed his attorney had represented him well, and was freely and voluntarily pleading guilty because he was guilty. The plea agreement stated that a supervised release term of five years would follow any term of imprisonment. The agreement also provided that, if "the Court finds that Wright is entitled to a reduction for acceptance of responsibility," the government would move for an additional one-point reduction under U.S.S.G. § 3E1.1(b). Finally, the agreement contained an appeal waiver by which Wright waived his right to appeal "any sentence imposed." Wright and his counsel also signed the agreement.

At the plea hearing, Wright indicated that he had an adequate opportunity to meet with his attorney to talk about the case, the indictment, the charge, the evidence, and the plea agreement. He indicated that he was satisfied with his attorney's advice and that he had reviewed and discussed the plea agreement with his attorney, understood and agreed with what the plea agreement said, and signed it. Wright then indicated that he understood the consequences of his guilty plea, and the court informed Wright of the statutory maximum and minimum sentences and that Wright "could be placed on supervised release for up to five years," which Wright understood. Wright understood that he did not have to plead guilty, and the

court told him that, even at that time, Wright could request that his attorney select a jury and require the government to prove its case beyond a reasonable doubt. The court then informed Wright what the government would have to prove, which Wright understood. Finally, Wright stated that he had reviewed with his attorney the "factual resume" attached to his plea agreement, and he agreed that the facts set forth in it were true. The district court found that Wright was entering his plea knowingly and voluntarily and adjudged him guilty. No objections were made.

Nearly two months after pleading guilty, Wright filed a pro se "Request of Defendant," which was really a letter to the district court. In it, Wright stated that he had "questions" concerning his case and believed that he "was not represented rightfully." Wright explained that he had just received a copy of his plea agreement and did not know what had happened between him, his attorney, and the government because things happened so fast that he did not have a chance to review the plea agreement or factual resume. He felt as though he had been forced to make a "life decision in 20 seconds" and did not know he was pleading guilty to one and a half kilograms of cocaine, could not plead guilty to that amount, and did not know how he was being charged with conspiracy for what started out as a state charge of attempt to distribute. Wright did not understand how he could be charged with a conspiracy involving Williams when Williams was not charged

4

with the same conspiracy.[1]

Wright continued, stating that he had wanted his attorney to hold an evidentiary hearing regarding Williams's use as an informant and credibility, as well as to suppress statements Wright made to police when he was arrested. Finally, Wright believed that the government's attorney was vindictive toward him, as the same attorney had prosecuted him on a previous case and failed to follow through on a promised Rule 35 motion. He requested to have another prosecutor assigned to the case, a new lawyer to represent him, and a discussion with the court about his plea agreement.

The district court struck the letter from the record, finding that Wright, despite being represented by counsel, improperly had filed a pleading or communication with the court. It further noted that if Wright was dissatisfied with his attorney, he could ask his attorney to withdraw and, if Wright demonstrated his indigence, new counsel could be appointed on his behalf. Shortly thereafter, Wright's counsel filed a motion to withdraw as counsel and a new attorney filed his notice of appearance on Wright's behalf. At no point did Wright file a motion to withdraw his plea.

---

[1] The record reflects that James Williams was charged by a grand jury in the federal district court in Mobile, Alabama, for conspiracy to possess with intent to distribute cocaine. Williams pled guilty to the charges and was released on bond pending sentencing.

A presentence investigation report (PSI) was then completed, and among the calculations relevant to Wright's appeal, it found that Wright's base offense level was 26, but that he was only entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) because his guilty plea was not timely. His criminal history category was found to be III, which, at offense level 24, would have resulted in a guidelines range of 63 to 78 months' imprisonment. However, pursuant to 21 U.S.C. § 841(b)(1)(B), the statutory minimum term of imprisonment was 120 months, making the guidelines sentence 120 months. Finally, the PSI stated that, pursuant to the enhanced penalty provisions of 21 U.S.C. § 841(b)(1)(B), a mandatory supervised release period of eight years was required.

Wright filed one objection to the PSI, arguing that he was entitled to an additional one-point reduction for acceptance of responsibility because (1) the delay in entering a plea was due, in part, to his inability to discuss certain legal issues with regard to his plea with his previous attorney, and (2) since his arrest, he had provided truthful information to the government and fully cooperated with the government's investigation of his misconduct. Wright "[adopted] the balance of the Pre-sentence Report, and [had] no objection to the balance of said report." Prior to sentencing, the government filed a motion for a downward departure

6

pursuant to U.S.S.G. § 5K1.1, as Wright had provided substantial assistance in the investigation and prosecution of others.

On February 10, 2005, the district court held a combined supervised release revocation and sentencing hearing, and Wright waived his right to a separate revocation hearing, admitting that his guilt for the present offense was a violation of his supervised release for which the guidelines recommended a sentence of 12-18 months. As to sentencing, Wright stated that he had reviewed the PSI with his attorney, and the court proceeded to address Wright's sole objection regarding the additional one-point reduction for acceptance of responsibility. The court questioned Wright as to whether the one-point reduction would make any difference at all, as the statutory minimum sentence was 120 months' imprisonment, and the one-point reduction would have no effect on the statutory minimum. Wright conceded that the court was correct and he had no other objections to the PSI. The court thereby adopted the findings and calculations of the PSI and determined that the guidelines would require a 120-month sentence. Thus, the court adopted the PSI's factual finding that a one-point reduction was not warranted in this case.

Next, the court addressed the government's motion for a downward departure "under the statute and under the advisory guidelines." The court heard

evidence from both sides regarding Wright's assistance, including testimony from a state homicide detective, and ultimately concluded that Wright's assistance in the investigation of another case was more substantial than the government had made it out to be. The government stated that it was recommending "ten percent off the hundred and twenty months" (12 months) and it would not oppose running Wright's sentence for the supervised release revocation concurrently. Wright requested fifty percent off of the statutory minimum, arguing that it would put him closer to the calculated guidelines range. Wright, addressing the court, further indicated that he was hopeful that the departure would be applied from the low-end guidelines calculation as opposed to the statutory minimum.

The district court found that Wright was asking for a little more consideration than it believed was appropriate and explained that:

> [T]he law requires that people who cannot learn their lesson the first time must learn it the second time. That is what the hope is of this Court, that another sentence is going to teach you, finally, to quit living this sort of lifestyle. . . . As good as you've done in some respects you have done bad in others. . . . [T]his is all going to come together here in a minute in a sentence that I'm going to fashon [sic] that I think meets all the sentencing objectives that the law requires that be considered by me . . . one of which is to protect the public from further crimes . . . and afford an adequate deterrence to criminal conduct. . . . And you have failed in the previous sentence to be deterred and to have the public protected.

The court then sentenced Wright to 16 months' imprisonment for the

8

supervised release revocation. As to the instant sentence, the court granted the government's motion for a downward departure from the statutory minimum sentence and imposed a 78-month sentence (42 months below the statutory minimum) to run concurrently with the 16-month supervised release sentence. The court stated that it "imposed the sentence to meet the sentencing objective of punishment, deterrence and incapacitation." The remaining count in the indictment was dismissed and no objections were made to either the court's findings or sentence.

On appeal, Wright requests that his guilty plea be set aside pursuant to Fed.R.Crim.P. 11(e). First, Wright argues that he moved to withdraw his plea below and asserted to the district court that his guilty plea was not entered knowingly and voluntarily because he did not understand the charge of conspiracy, have adequate time to review the plea agreement, or intend to plead guilty to 1.5 kilograms of cocaine. Second, he argues for the first time on appeal that both the plea agreement and the district court incorrectly set forth the minimum mandatory supervised release term, violating his substantial rights. Finally, Wright argues that the government breached the plea agreement by failing to file a motion authorizing the district court to reduce Wright's guidelines range an additional one point for acceptance of responsibility. Wright argues that this one point was

necessary, notwithstanding the district court's finding that it was trumped by the statutory minimum, because the court intended to reward Wright for his substantial assistance by sentencing him at the high end of guideline range, and that range was incorrectly calculated. The government argues that Wright waived his right to appeal.

## A. Appeal Waiver

We first conclude that the government is attempting to expand Wright's sentence appeal waiver beyond what it properly covers. In United States v. Copeland, 381 F.3d 1101 (11th Cir. 2004), the defendant entered a plea agreement that contained a sentence-appeal waiver and filed an appeal alleging that the government had breached the plea agreement. 381 F.3d at 1104. The government argued that the sentence-appeal waiver covered the defendant's right to appeal anything connected with the case. Id. We rejected the government's argument, holding that the language of the waiver applied only to the sentence, not to the defendant's allegation that the government had breached the plea agreement. Id. at 1104-05.

The language of the appeal waiver in Wright's agreement provides that Wright "knowingly and voluntarily waives the right to appeal any sentence imposed." Here, Wright is not appealing his sentence, but is challenging his guilty

10

plea and alleging a breach of the plea agreement. Accordingly, like in Copeland,

Wright has not waived his right to appeal the matters alleged in his brief. See

Copeland, 381 F.3d at 1105.

### B. Motion to Withdraw Guilty Plea

Secondly, Wright mentions in his initial brief that the standard of review for

a district court's denial of a motion to withdraw a guilty plea is for abuse of

discretion. While this is a true statement of law, the record does not reflect that

such a motion was ever filed with or considered by the district court.[2] Wright is

arguing that his "Request of Defendant" constituted a motion to withdraw his

guilty plea, but he appears to be mistaken, as that letter does not specifically

request that he be permitted to withdraw his plea, but rather an opportunity to

discuss it.

Furthermore, to the extent that it was construed as a motion to withdraw his

guilty plea for being involuntary and unknowing, the district court did not abuse its

discretion by striking it because Wright was represented by counsel, not

proceeding pro se. See United States v. McCarty, 99 F.3d 383, 385 (11th Cir.

1996) (noting that we review the denial of a motion to withdraw a guilty plea for

abuse of discretion). As the district court correctly noted, "[t[his court has held

---

[2] It is noted that the government, in its brief, refers to the "Request of Defendant" as a motion to withdraw his plea. (Red Brief at 3, 8).

11

repeatedly that an individual does not have a right to hybrid representation." Cross v. United States, 893 F.2d 1287, 1291-92 (11th Cir. 1990). Wright hired new counsel, but did not subsequently attempt to withdraw his guilty plea. Accordingly, there was no abuse of discretion.

Finally, we note that the district court struck the "Request of Defendant" from the record. Wright does not argue that this was in error, and, therefore, we will not consider the letter's contents. Cf. LeCroy v. Sec'y, Fla. Dep't Corrs., No. 04-13799, manuscript op. at 46-47 n.20 (11th Cir. Aug. 29, 2005) ("[t]he district court struck [the defendant's] earlier statement from the record and did not consider it when denying the defendant's § 2254 petition. On appeal, the defendant has not challenged the district court's evidentiary ruling, and thus we do not consider this testimony.").

### C. Rule 11 Violation

Turning to the core issues presented in this appeal, Wright did not object to any alleged Rule 11 violations, and, therefore, we will review only for plain error. See United States v. Camacho, 233 F.3d 1308, 1313 (11th Cir. 2000). We will find plain error where "(1) error occurred, and (2) the error is plain, (3) affects the defendant's substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." United States v. Romano, 314 F.3d

12

1279, 1281 (11th Cir. 2002).

We have identified the three core concerns of Rule 11 as: "(1) ensuring that the guilty plea is free from coercion; (2) ensuring that the defendant understands the nature of the charges against [him]; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea." Camacho, 233 F.3d at 1314. "[A] district court's failure to satisfy any of the core objectives of Rule 11 affects a defendant's substantial rights and, thus, can constitute plain error." Id.

In the instant case, Wright, with the assistance of counsel, signed a plea agreement after indicating that he was pleading guilty freely and voluntarily. At the plea colloquy, Wright confirmed to the district court that he had not been coerced into entering the guilty plea, and that, after consulting with his attorney, Wright had decided to enter the plea. Accordingly, there does not appear to be any coercion involved in the plea.

Secondly, Wright appears to have understood the nature of the charges. The plea agreement states that Wright had time to consult with his attorney, who explained the facts of the case, the essential elements of the charge, the applicable burden of proofs, and all applicable defenses. At the plea colloquy, the district court explained to Wright, who had attended college, that the government had the burden of proving beyond a reasonable doubt to a jury the charge in the indictment,

13

that Wright and some other person had come together to form an understanding that they would try to accomplish a common and unlawful plan, which in this case was to possess with the intent to distribute approximately a kilogram of cocaine, and that Wright was aware of the plan and willfully joined in it. Wright stated that he understood. He further stated that he had agreed to the signed "Factual Resume" setting out the facts of the case. The court asked Wright if he understood everything that the court had been talking about, which Wright did. Accordingly, it cannot be said that Wright did not understand the nature of the charges against him.

As to the consequences of his plea, we conclude that there was error here because the district court, as well as the plea agreement signed by Wright, incorrectly stated that Wright would be subject to a supervised release term of five years, while the penalizing statute, 21 U.S.C. § 841(a)(1)(B), clearly indicated that the minimum supervised release term was eight years. See Fed.R.Crim.P. 11(b)(1)(H); 21 U.S.C. § 841(a)(1)(B). However, the PSI disclosed to Wright before sentencing correctly stated that the supervised release term would be at least eight years.

In United States v. Bejarano, 249 F.3d 1304 (11th Cir. 2001), the defendant argued that the district court committed plain error by failing to inform him of the

14

term of supervised release that would follow his term of imprisonment. Id. at 1306. There, the defendant's plea agreement stated only that he would be subject to a term of supervised release and later, at the plea colloquy, the district court did not inform the defendant that there was a mandatory minimum supervised release term of five years. Id. at 1304-06. However, the PSI correctly indicated that the supervised release term, pursuant to statute, was five years, and the defendant failed to object to that portion of the PSI. Id. at 1306. We held, under plain error review, that the defendant's "conduct indicates that his substantial rights were not affected by the district court's failure to inform him at his plea colloquy of the specific term of supervised release required by statute." Id. at 1307.

While the instant case differs in that, here, Wright was informed of an incorrect term of supervised release, the PSI corrected that error and Wright did not object to the PSI's supervised release calculation. After the district court had imposed Wright's sentence, including the eight-year supervised release term, Wright and his attorney were again given an opportunity to object and failed to do so. Thus, like the defendant in Bejarano, we conclude that Wright had an opportunity to object to the supervised release, failed to do so, and, therefore, by his own conduct has indicated that his substantial rights were not affected by the district court's error. Cf. United States v. Carey, 884 F.2d 847, 849 (11th Cir.

15

1989) (holding, under plain error review, that although the district court erred by failing to inform the defendant at his plea hearing of the term of supervised release, the defendant failed to object to the court's imposition, pursuant to the PSI, of a term of supervised release, and, therefore, the defendant's substantial rights were not violated).

## D. Breach of Plea Agreement

Lastly, Wright argues that the government breached the plea agreement by not requesting that the district court reduce Wright's guideline offense one additional level for acceptance of responsibility under U.S.S.G. § 3E1.1(b). As there was no objection made that the government breached the plea agreement, review is for plain error. Romano, 314 F.3d at 1281. Pursuant to § 3E1.1(b), a defendant may qualify for an additional one-level reduction if, inter alia, he timely notifies authorities of his intention to enter a guilty plea, thus permitting the government and the court to allocate their resources efficiently. U.S.S.G. § 3E1.1(b).

Here, the PSI found that Wright was not entitled to the additional one-level reduction because his plea was not timely. This likely was because Wright's plea was entered the same day as a jury was set to be empaneled for his case. Moreover, at sentencing, the district court correctly noted that, even if Wright

16

received the additional one-level reduction, it would have no impact on his sentence because, pursuant to statute, the mandatory minimum was 120 months. Wright's attorney agreed, and with no further objections, the court adopted the PSI's findings and calculations and found it unnecessary to resolve the issue of whether Wright was entitled to the one-level reduction.

Wright now argues, however, that the issue of the one-level reduction was not moot because, "[i]f as it appears, the court intended to reward Wright for his substantial assistance by reducing his sentence from the statutory maximum to the high end of the otherwise applicable guideline range, then it was crucial that the range be calculated correctly." It is true that, notwithstanding the statutory minimum of 120 months, the PSI calculated a guideline range of 63 to 78 months' imprisonment without the additional one-level reduction. Nevertheless, Wright has offered no evidence to suggest that the district court's downward departure from the 120-month sentence to a 78-month sentence was a direct result of the PSI's calculations. His pure speculation in this regard is insufficient to establish plain error because, even assuming an error occurred, the district court had discretion when departing, and the record does not indicate any reasonable probability of a different outcome solely on the basis of an apparently irrelevant one-level reduction having no impact on the statutory minimum. Cf. United States v.

17

Rodriguez, 398 F.3d 1291, 1299-1301 (2005) (discussing plain error review in context of Booker Sixth Amendment error, and concluding that, under plain error review, a defendant will succeed only if he demonstrates that, but for the error, there was a reasonable probability of a different sentence).

To the contrary, the district court never mentioned what the guideline range would be absent the 120-month mandatory minimum, and when it sentenced Wright, it did so believing that a 78-month sentence would meet the objectives of punishment, deterrence, and incapacitation, all things that it considered particularly relevant given that Wright was a repeat offender who had committed the instant offense while on supervised release.

Based on the foregoing, Wright has failed to demonstrate how the government's failure to move for an additional one-point reduction at sentencing violated his substantial rights under plain-error review. In sum, we conclude that Wright's substantial rights were not violated where he failed to object to the PSI's correct statement for the term of supervised release, and the government's failure to request a one-point acceptance of responsibility reduction had no effect on the guideline calculation in this case. We, therefore, affirm.

**AFFIRMED.**