[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14873
Non-Argument Calendar

_____

D.C. Docket No. 2:16-cr-00023-LSC-WC-1


UNITED STATES OF AMERICA,

                                                    Plaintiff-Appellee,

versus

CHRISTOPHER BERNARD PITTS,

                                                    Defendant-Appellant.


_____

Appeals from the United States District Court
for the Middle District of Alabama

_____

(November 27, 2019)


Before BRANCH, GRANT, and EDMONDSON, Circuit Judges.

PER CURIAM:

Christopher Pitts appeals his conviction for wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343.  No reversible error has been shown; we affirm.

I.    Background

In 2005, Pitts -- a lawyer licensed to practice in Alabama -- entered into two contracts with the United States Department of Housing and Urban Development ("HUD").  Pursuant to the contracts, Pitts agreed to act as closing attorney for the sale of all HUD-owned homes in North and Central Alabama.  Each contract required Pitts to establish a separate escrow account and to use that escrow account to receive purchase money, pay closing costs, and to remit payments to HUD.  In compliance with the contracts, Pitts opened two escrow accounts: one account for the North Alabama home sales and one account for the Central Alabama home sales.  By 2008, a shortage had developed in each of the HUD escrow accounts; and Pitts began transferring money in and out of the escrow accounts.

Pitts was later charged with one count of wire fraud affecting a financial institution.  Pitts pleaded guilty pursuant to a written plea agreement.  According to

2

the plea agreement, Pitts engaged in a scheme to defraud HUD by "(1) commingling funds among the various escrow accounts that he controlled without informing HUD of his doing so; and (2) causing to be disbursed from the escrow accounts funds that he transferred and not providing them to HUD."  In furtherance of this fraudulent scheme, Pitts emailed to HUD "documents purporting to be 26 separate requests to wire transfer funds to HUD in connection with the sale of HUD-owned homes," when Pitts knew that 9 of those documents were fraudulent.

The probation officer prepared a presentence investigation report ("PSI").  In pertinent part, the PSI determined -- consistent with the plea agreement -- that Pitts was responsible for a total loss amount of $1,090,888.53, based on the 9 fraudulent wire transfers.  Pitts objected to the calculated loss amount.

Pitts sought to introduce at sentencing the testimony of a purported loss amount expert, Mary Anne Harris.  Harris was prepared to testify about the source of some of the shortages in the HUD escrow accounts and about her opinion that the shortages were due to negligence, not intentional fraud.  The government moved to exclude Harris's testimony.

Meanwhile, Pitts also filed three motions to withdraw his guilty plea. Among other things, Pitts asserted that Harris's proposed testimony constituted "new evidence" demonstrating that he was innocent of the charged offense.

3

The district court conducted a hearing during which Harris testified about her background, her methods, and about her opinions and conclusions on the loss amount.  After the hearing, the district court granted the government's motion to exclude Harris's testimony and denied Pitts's motions to withdraw his guilty plea.

At sentencing, the government withdrew its earlier motion for a one-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b).  The district court calculated Pitts's guidelines range as 37 to 46 months and imposed a sentence of 37 months' imprisonment.

II.    Discussion

A.

On appeal, Pitts contends that the government breached the plea agreement in three ways: (1) by "applying trial evidentiary standards during the sentencing phase to Pitts's loss expert, Harris, leading to her exclusion;" (2) by withdrawing the government's earlier motion for a reduction for acceptance-of-responsibility; and (3) by requesting a sentence at the top of the guidelines range.

Because Pitts failed to raise a timely objection to the government's purported breach of the plea agreement, we review this issue only for plain error.

4

See Puckett v. United States, 556 U.S. 129, 133-34 (2009) (applying plain-error review when a defendant failed to object at sentencing that the government had violated the terms of the plea agreement).  To establish plain error, a defendant must show (1) error, (2) that was "clear or obvious," (3) that affected his substantial rights, "which in the ordinary case means . . . that it 'affected the outcome of the district court proceedings,'" and (4) that seriously affected "the fairness, integrity or public reputation of judicial proceedings."  See id. at 135.

The government is bound by promises it makes that are material and that induce the defendant to plead guilty.  Santobello v. New York, 404 U.S. 257, 262 (1971).  In considering an argument that the government breached the plea agreement, we must "first determine the scope of the government's promises."  United States v. Copeland, 381 F.3d 1101, 1105 (11th Cir. 2004).  "In determining the meaning of any disputed terms in an agreement, the court must apply an objective standard and 'must decide whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea.'"  Id.  An ambiguous agreement "must be read against the government."  Id. at 1105-06.

About Pitts's first argument, we reject it:  the government committed no breach of the plea agreement by moving to exclude -- as unreliable -- Harris's proposed testimony.  The plea agreement contains no express language about

5

witness testimony.  Although the plea agreement contemplated that Pitts would have an opportunity to present evidence disputing the total loss amount attributed to him, nothing in the plea agreement can be construed reasonably as prohibiting the government from seeking to exclude evidence that arguably lacked the sufficient indicia of reliability.

Contrary to Pitts's argument on appeal, the government made no assertion that Harris's testimony be subjected to a higher evidentiary standard under Fed. R. Evid. 702 or under Daubert.[1]  The government noted that a split of authority existed about the applicability of Daubert at sentencing but argued clearly that Harris's testimony failed to satisfy the more lenient "sufficient indicia of reliability" standard.

About Pitts's second breach argument, we observe that the plea agreement provided expressly that "[d]etermination of whether the defendant met the defendant's obligations to qualify for the reduction pursuant to § 3E1.1 is at the sole discretion of the Government."  The unambiguous terms of the plea agreement contained no promise that the government would recommend a sentencing reduction.  Thus, we cannot conclude that the government breached the terms of the plea agreement by withdrawing its motion for Pitts to receive an additional one-level reduction for acceptance of responsibility under section 3E1.1(b).

---

[1] Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

About Pitts's third argument, we accept that the government agreed expressly to recommend a sentence at the low end of Pitts's guidelines range.  We also accept that the government broke this promise by later seeking a sentence at the high end of Pitts's calculated guidelines range.  Because the district court rejected the government's recommendation -- and sentenced Pitts at the low end of the guidelines range -- Pitts can show no prejudice.  See Puckett, 556 U.S. at 141-42, n.4 (noting that a defendant whose plea agreement has been broken cannot show prejudice under plain-error review if the defendant "obtained the benefits contemplated by the deal anyway (e.g., the sentence that the prosecutor promised to request) . . ..").  Pitts has thus failed to show that he is entitled to relief.

B.

Pitts next contends that the district court erred in excluding the proffered testimony of his loss amount expert, Harris.

We review a district court's evidentiary rulings under an abuse-of-discretion standard.  United States v. Hernandez, 906 F.3d 1367, 1369 (11th Cir. 2018).  We review for clear error the district court's findings of fact at sentencing.  United States v. Hesser, 800 F.3d 1310, 1330 (11th Cir. 2015).  We will find clear error

7

only if we are "left with a definite and firm conviction that a mistake has been committed." United States v. Rothenberg, 610 F.3d 621, 624 (11th Cir. 2010).

When the parties dispute a factor important to sentencing, "the parties shall be given an adequate opportunity to present information to the court regarding that factor." See U.S.S.G. § 6A1.3(a). In resolving the dispute, "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." Id.

The parties agreed that the total loss amount to HUD equaled over $1,090,000. Pursuant to the plea agreement, however, the government agreed to recommend that Pitts not be held accountable for monies that were "negligently or recklessly misapplied and that [Pitts] did not intentionally misappropriate to his own use or benefit." Pitts bore the burden of proving that the loss amount attributable to him was less than the total loss amount to HUD.

The district court conducted a hearing -- during which Harris testified and was cross-examined -- to evaluate Harris's qualifications and to preserve her proffered testimony. After considering Harris's hearing testimony, the district court granted the government's motion to exclude her testimony. The district court concluded that Harris was "wholly unqualified to render the proffered opinions." Among other things, the district court focused on Harris's testimony that she

8

conducted her financial analysis based solely on documents provided to her by Pitts: documents that Harris conceded were incomplete.  Nor had Harris obtained records from Pitts's personal bank accounts or directly from the banks that held the HUD escrow accounts.  Because Harris's analysis considered only "biased and incomplete information," the district court said that Harris's conclusions were also necessarily "biased and incomplete."  The district court also determined that Harris -- who was no certified public accountant -- lacked the necessary training, education, and skill to perform the financial analysis involved in this case.  Harris also lacked sufficient knowledge about the methodologies utilized in her analysis because she had merely sent the documents to be inputted and processed by a third-party software vendor.

On this record, we cannot say that the district court abused its discretion in declining to consider Harris's testimony in determining the total loss amount attributable to Pitts.  Harris's own testimony -- that her analysis was based entirely on incomplete records provided to her by Pitts -- supports the district court's determination that Harris's conclusions were necessarily incomplete and biased.  For the reasons described by the district court, Harris's testimony lacked sufficient indicia of reliability to be considered properly at sentencing.

We note that the district court cited to Rule 702 and to <u>Daubert</u> -- instead of to the "sufficient indicia of reliability" standard applicable in sentencing hearings -

- in setting forth the standard for considering the admissibility of expert testimony. Even so, Pitts has failed to demonstrate a reversible error.  Given the district court's findings that "holes in much, if not all, of [Harris's] data" existed and that Harris was "wholly unqualified" to render the proffered opinions and that Harris's conclusions were "biased and incomplete," Harris's testimony failed to satisfy the admissibility criteria under the pertinent standard.

## C.

Pitts next challenges the district court's denial of his motions to withdraw his guilty plea.

We review the denial of a motion to withdraw a guilty plea under an abuse-of-discretion standard.  United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir. 2006).  No abuse of discretion occurs "unless the denial is 'arbitrary or unreasonable.'"  Id.

A defendant who seeks to withdraw a guilty plea after the court has accepted the plea but before sentencing must demonstrate "a fair and just reason" for doing so.  Fed. R. Crim. P. 11(d)(2)(B).  We construe liberally whether a defendant's pre-sentence motion to withdraw is supported by "a fair and just reason."  United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1988).  A defendant, however, has

10

"no absolute right to withdraw a guilty plea." Id. Instead, whether a defendant will be allowed to withdraw his plea is a decision "left to the sound discretion of the trial court." Id.

In determining whether a defendant has satisfied his burden of showing a "fair and just reason" for withdrawal, the district court must "consider the totality of the circumstances surrounding the plea." Id. at 471-72. In pertinent part, the district court considers (1) whether the defendant received close assistance of counsel, and (2) whether the plea was entered knowingly and voluntarily. Id. at 472.

The district court abused no discretion in denying Pitts's motions to withdraw his guilty plea. About the assistance received from his lawyer, Pitts testified at his plea hearing that he had discussed the charges, the possible sentences, and the plea agreement with his lawyer, that he understood them, and that he was satisfied with his lawyer's representation. Statements made under oath by a defendant during a plea colloquy receive a "strong presumption" of truthfulness. United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). A defendant "bears a heavy burden" to show that his statements under oath were

false.  United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).  Pitts has failed to satisfy that burden.[2]

The record also supports the district court's determination that Pitts's plea was entered knowingly and voluntarily.  At the plea hearing, Pitts's said that he had read and understood the plea agreement, that he understood the rights he was giving up by pleading guilty, and that he was pleading guilty because he was in fact guilty.  Pitts also confirmed the factual basis underlying his conviction, as set forth in the plea agreement.

Pitts now contends, however, that his plea was not truly knowing because he failed to understand fully the factual basis underlying the charges against him.  Relying on "new evidence" (Harris's financial analysis and opinions), Pitts says that the discrepancies in the escrow accounts did not arise from his own intentional or fraudulent acts.  We reject this argument.  First, the district court determined properly that Harris's conclusions amounted to no "new evidence."  Harris's analysis was based entirely on documents provided to her by Pitts in 2011, well before Pitts's plea hearing in 2016.

---

[2] Although Pitts now contends that his lawyer provided ineffective assistance, Pitts raised no argument in his motions to withdraw his plea about his lawyer's performance surrounding his plea hearing.  In addition, because the record is not yet sufficiently developed on this issue, we decline to consider Pitts's ineffective-assistance-of-counsel claim on direct appeal.  See United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002) (in general, we will not "consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim or develop a factual record.").

More important (setting aside the issue of reliability), Harris's opinions about the cause of the discrepancies in the escrow accounts do nothing to negate the conduct to which Pitts pleaded guilty.  Pitts pleaded guilty to perpetuating a scheme to defraud HUD by knowingly and intentionally concealing from HUD evidence of the shortfalls in the escrow accounts and submitting fraudulent documents to HUD.  Whether Pitts caused intentionally the shortfalls in the escrow accounts or benefitted personally from those shortfalls is immaterial to Pitts's guilt of the charged offense.

Pitts has demonstrated no "fair and just reason" justifying the withdrawal of his guilty plea.  The district court abused no discretion in denying Pitts's motions to withdraw his plea.  See United States v. Gonzalez-Mercado, 808 F.2d 796, 801 (11th Cir. 1987) (noting that close assistance of counsel and a knowing and voluntary plea are strong evidence in support of a district court's denial of a motion to withdraw a guilty plea).

D.

Pitts next contends that the district court erred in failing to sua sponte disqualify or recuse the entire United States Attorney's Office of the Middle District of Alabama.  We disagree.  As grounds for disqualification, Pitts says that

13

U.S. Attorney Beck represented Pitts in disciplinary proceedings before the Alabama State Bar arising from the same conduct underlying Pitts's criminal proceedings. Although Beck recused himself from this case, Pitts contends that Beck had access to sensitive information about Pitts's defense and could not have been screened effectively from the criminal investigation. Never has the United States Attorney's Office conceded the inadequate screening of Beck.

Because Pitts raised no timely argument about disqualification in the district court, we review this argument only for plain error. See United States v. Berger, 375 F.3d 1223, 1227 (11th Cir. 2004).

The district court committed no plain error by failing to disqualify sua sponte the entire U.S. Attorney's Office for the Middle District of Alabama. Pitts cites to no controlling authority supporting his argument that disqualification was mandated. To the contrary, other courts that have considered this issue have said that the disqualification of an entire United States Attorney's office will "almost always [constitute] reversible error." See United States v. Bolden, 353 F.3d 870, 875 (10th Cir. 2003) (noting that "we can only rarely -- if ever -- imagine a scenario in which a district court could properly disqualify an entire United States Attorney's office"); see also United States v. Hasarafally, 529 F.3d 125, 128 (2d Cir. 2008) ("While a private attorney's conflict of interest may require disqualification of that attorney's law firm in certain cases, . . . such an approach is

14

not favored when it comes to the office of a United States Attorney . . ..").  We also decline Pitts's request that we, on our own record, disqualify the entire office.

AFFIRMED.