[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12697

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KEVIN JEAN-GILLES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cr-00059-WWB-DCI-2

_____

Before JORDAN, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

Kevin Jean-Gilles appeals his 235-month sentence and $125,000 restitution order after pleading guilty to conspiring to manufacture, distribute, and possess with intent to distribute large quantities of fentanyl and fentanyl analogue, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). He contends that the Government breached the plea agreement, the District Court imposed a procedurally and substantively unreasonable sentence, the restitution order exceeded statutory limits, and the written judgment improperly included discretionary supervised release conditions. We reject each argument and affirm.

## I. Facts

Jean-Gilles, along with two coconspirators, ran an industrial-scale fentanyl pill operation. Agents seized over 21,000 grams of fentanyl analogue, nearly 2,000 grams of fentanyl, more than 1,100 grams of methamphetamine, along with firearms, pill presses, and cutting agents sufficient to make millions of counterfeit pills. The group used multiple properties, including a rented residence whose owner, Linda Periquito, suffered substantial damage and financial loss.

Jean-Gilles entered a plea agreement, admitting his role and agreeing to make restitution to Periquito. The Government, in turn, promised to recommend a sentence within the Guidelines as determined by the District Court and to consider a motion under

U.S.S.G. § 5K1.1 for substantial assistance. It also retained the right to provide relevant factual information about Jean-Gilles's conduct.

At sentencing, the District Court adopted the presentence investigation report (PSI), which calculated a Guidelines range of 292–365 months. Applying a two-level downward variance and a two-level § 5K1.1 departure, the Court arrived at a final range of 188–235 months. It imposed the top-end sentence of 235 months, citing the extraordinary seriousness of the offense and the need for deterrence. It also ordered $125,000 in restitution to Periquito and included thirteen standard conditions of supervised release in its written judgment.

## II. Discussion

### A. Breach of the Plea Agreement

Jean-Gilles first contends that the Government breached the plea agreement by recommending a high-end sentence and misstating the agreed-upon restitution amount. But plain-error review applies because he raised no breach objection below. *See United States v. Malone*, 51 F.4th 1311, 1318 (11th Cir. 2022). To prevail, he must show (1) error, (2) that is plain, (3) affecting substantial rights, and (4) seriously affecting the fairness of the judicial proceedings. *Id.* (citations omitted).

We begin by determining the scope of the Government's promises. *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004). The plea agreement unambiguously obligated the Government to recommend a sentence within the Guidelines "as determined by the Court," not as anticipated or assumed by Jean-Gilles.

And that is what the Government did. The Government recommended 235 months, the top of the range determined by the District Court after applying the downward departures and variances. There was no promise to recommend a lower sentence, nor any promise to disregard relevant conduct. To the contrary, the agreement expressly reserved the Government's right to provide "relevant factual information" about Jean-Gilles's conduct, including activities beyond the offense conduct.

As to restitution, the plea agreement stated that Jean-Gilles agreed to make "full restitution" to Periquito and that the restitution "in this case is $65,000." But the agreement also provided that the Court was not bound by the parties' recommendations. And the PSI contained ample, unrebutted evidence—backed by receipts, broker estimates, and rental records—showing that Periquito's total losses exceeded $125,000. Even if the Government's statements at sentencing diverged from the plea agreement's $65,000 figure, Jean-Gilles cannot show that any such error affected his substantial rights, given that the District Court was free to impose restitution beyond the recommended amount. *See Malone*, 51 F.4th at 1319.

### B. Procedural and Substantive Sentencing Challenges

Jean-Gilles next argues that the District Court procedurally erred in calculating his Guidelines range and that his 235-month sentence was substantively unreasonable. We apply plain-error review to the procedural claim, as it was not preserved. *United States v. Owens*, 96 F.4th 1316, 1320 (11th Cir. 2024). For the substantive

23-12697              Opinion of the Court                    5

challenge, we review for abuse of discretion. *United States v. Holguin-Hernandez*, 589 U.S. 169, 173–75, 140 S. Ct. 762, 766–67 (2020).

Procedurally, the District Court did not err. It was entitled to rely on the unrebutted factual findings in the PSI, which attributed over 21,000 grams of fentanyl analogue and nearly 2,000 grams of fentanyl to Jean-Gilles—regardless of whether the factual stipulations in the plea agreement reflected lower quantities. *See United States v. Forbes*, 888 F.2d 752, 754 (11th Cir. 1989) ("Under the sentencing guidelines, the district court is not bound by stipulations of fact, but may with the aid of the presentence report, determine the facts relevant to sentencing." (citation and internal quotation marks omitted)). The PSI's detailed and consistent account of the drug quantities was substantial evidence supporting the offense level calculation.

The sentence was also substantively reasonable. The District Court explicitly considered the § 3553(a) factors, noting the vast scope and seriousness of the drug conspiracy, the deadly nature of fentanyl, Jean-Gilles's extensive criminal history, and the need for deterrence. While Jean-Gilles argues the Court gave insufficient weight to mitigating factors, we will not second-guess the weight the Court assigned. *See United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022) (citation omitted). The sentence, falling within the Guideline range, was well within the bounds of reasonableness. *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (citation omitted).

### C. Restitution

Jean-Gilles claims the District Court lacked statutory authority to impose restitution and miscalculated the amount. We review these unpreserved legal challenges for plain error and factual findings for clear error. *United States v. Brown*, 665 F.3d 1239, 1252 (11th Cir. 2011) (per curiam); *United States v. Cobbs*, 967 F.2d 1555, 1557–58 (11th Cir. 1992).

Under the Victim and Witness Protection Act (VWPA), a court may impose restitution for convictions under 21 U.S.C. § 841. 18 U.S.C. § 3663(a)(1)(A). Because § 846 conspiracies are punished as if the underlying § 841 offense had been completed, restitution was authorized here. *See* 21 U.S.C. § 846; 18 U.S.C. § 3663(a)(2). Periquito qualifies as a "victim" directly harmed by the conspiracy.[1] The Government, bearing the burden of proving losses by a preponderance of the evidence, *see United States v. McNair*, 605 F.3d 1152, 1221 (11th Cir. 2010) (citation omitted), met that burden through detailed and unrebutted documentation of property restoration costs, loss in value, and unpaid rent. The $125,000 figure was supported by the record and not clearly erroneous.

---

[1] The VWPA defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663(a)(2).

23-12697                Opinion of the Court                7

*D. Supervised Release Conditions*

Finally, Jean-Gilles contends that the written judgment improperly included thirteen discretionary supervised release conditions not pronounced at sentencing. Because Jean-Gilles did not object in the District Court, we review for plain error. *See United States v. Hayden*, 119 F.4th 832, 836 (11th Cir. 2024).

Although due process requires that discretionary conditions be pronounced at sentencing, referencing a set of publicly adopted standard conditions suffices. *See Hayden*, 119 F.4th at 838–39. Here, the District Court told Jean-Gilles he would be subject to "the mandatory and standard conditions adopted by the Court in the Middle District of Florida,"[2] which match the thirteen conditions listed in the written judgment.

"Because the district court orally referenced the 13 discretionary standard conditions of supervised release for the Middle District of Florida and because the oral pronouncement and written judgment do not conflict, it did not err—much less plainly err—

---

[2] The publicly available criminal judgment form for the Middle District of Florida contains 13 standard conditions of supervised release. *See Judgment in a Criminal Case*, U.S. Dist. Ct. for the Middle Dist. of Fla., https://www.flmd.uscourts.gov/form/judgment-criminal-case (last visited April 27, 2025); *Form AO 245B Judgment in a Criminal Case*, U.S. Cts., at 6, https://perma.cc/5PHV-Q76Q.

The United States Courts website indicates that this form was effective as of September 1, 2019. *See Judgment in a Criminal Case*, U.S. Cts., https://www.uscourts.gov/forms-rules/forms/judgment-a-criminal-case.

when it failed to describe the conditions of supervised release in its oral pronouncement." *Id.* at 838–39.

### III. Conclusion

The record reveals no breach of the plea agreement, no procedural or substantive sentencing error, no unlawful restitution order, and no due process violation in the supervised release conditions. The judgment is **AFFIRMED**.