[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12036

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MIGUEL RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20257-JEM-5

_____

Before NEWSOM, ABUDU, and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Miguel Rodriguez appeals his 120-month concurrent sentences on two drug convictions: (1) conspiracy to possess crack cocaine with intent to distribute between February and August 2022, and (2) possession with intent to distribute crack cocaine on February 3, 2022. Rodriguez's plea agreement, the government agreed to recommend a specific downward variance to a base offense level of 18 to account for the disparity between crack and powder cocaine in the Sentencing Guidelines' offense level calculations. However, the government otherwise expressly reserved the right to make any recommendation as to the quantity and quality of the punishment.

On appeal, Rodriguez argues that at sentencing the government breached the plea agreement by seeking an upward variance under the 28 U.S.C. § 3553(a) sentencing factors after recommending a downward variance to a base offense level of 18. Rodriguez also contends his 120-month sentence is procedurally and substantively unreasonable. After review, we conclude the government did not breach the plea agreement and affirm Rodriguez's 120-month sentence.

## I.  BACKGROUND FACTS

### A.  Rodriguez's Drug Trafficking

Despite being only 28 years old at sentencing, this was not Rodriguez's first rodeo.  By the time of the events giving rise to his two current convictions, Rodriguez already had served a four-year federal sentence for prior drug-related crimes he committed while involved with a group called Big Money Team that distributed crack cocaine in Miami.[1]  After completing his prison sentence, Rodriguez repeatedly violated the terms of his supervised release and was finally released from federal custody on May 17, 2021.

By February 2022, defendant Rodriguez was again involved with drug dealing.  Specifically, between February and August 2022, Rodriguez was a member of a drug distribution conspiracy run by a street gang.  Codefendant Yulisey Herrera, assisted by codefendants Jose Rivera and Bryan Mendez, operated a neighborhood crack cocaine distribution center out of a multi-unit residential building, referred to as a "trap house."  Herrera was the primary source of crack cocaine for the other conspirators, and she also brokered firearm sales via text messages.

Defendant Rodriguez and codefendant Luis Reyes were two of the gang's "street-level" distributors who sold drugs and provided protection during the drug transactions.  The conspirators primarily sold crack cocaine from and around the trap

---

[1] Rodriguez's prior federal sentence originally was 120 months but was later reduced to 48 months.

house but sometimes sold from other locations, including a corner store within walking distance of the trap house. Herrera also employed juveniles in "various roles, including selling drugs and running money for Herrera's distribution center." Rodriguez knew that his co-conspirators routinely carried firearms in furtherance of the drug trafficking conspiracy, including to protect against potential robbers and to defend their territory around the trap house from rivals seeking to expand.

During a law enforcement investigation of the gang's drug trafficking operation, defendant Rodriguez sold crack cocaine to a confidential informant ("CI") on three separate dates. On February 3, 2022, Rodriguez sold multiple rocks of crack cocaine to a CI at the trap house. During that transaction, Rodriguez also quoted the CI a price for a firearm. Thereafter, on May 12, 2022 and June 21, 2022, a CI again purchased crack cocaine from Rodriguez. During the investigation, law enforcement also recovered text message exchanges between Rodriguez and Herrera, including on February 13, 2022, February 16, 2022, May 8, 2022, and May 22, 2022, discussing purchasing crack cocaine. In all, 284 grams of crack cocaine were attributable to Rodriguez.

Later, law enforcement discovered that one of the firearms recovered from codefendant Herrera and Mendez's shared residence was used by defendant Rodriguez in a shooting on or about June 1, 2022, in an effort to prevent another suspected drug dealer from trying to sell crack cocaine in the area around the trap house. As a result, Rodriguez was also charged with state crimes

by Florida prosecutors.  Other firearms found at the residence were connected to another shooting on June 27, 2022, also linked to Rodriguez, and that was also an effort to protect the area around the trap house from another suspected drug dealer.[2]

## B.    Indictment and Plea Agreement

A multi-count superseding indictment charged Rodriguez and his codefendants with various drug and firearm offenses.  For his part, Rodriguez was charged with one count of conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C) (Count 9), and three counts of possession with intent to distribute crack cocaine on February 3, 2022, May 12, 2022, and July 21, 2022 respectively, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts 14, 15, and 16).

Pursuant to a written plea agreement, Rodriguez agreed to plead guilty to Counts 9 and 14 in exchange for the government dismissing Counts 15 and 16.

In paragraph 7 of the plea agreement, entitled "Offense Level Calculation," the government agreed to recommend a downward variance at sentencing to offset the disparity between

---

[2] Rodriguez initially objected to the presentence investigation report's ("PSI") facts about the shootings, stating that he would neither admit nor deny them. At sentencing, the district court asked Rodriguez to re-raise any unresolved objections to the PSI or the court would "consider them to be waived." response, defense counsel stated that Rodriguez's filed objections "were nothing that needs to take the Court's time."  On appeal, Rodriguez does not contest the PSI's facts.

powder and crack cocaine found in the Sentencing Guidelines' offense levels, as follows:

> In this case, the quantity of crack cocaine reasonably foreseeable to Defendant is 284 grams, which, if converted to powder cocaine, would result in a base offense level 18, instead of a base offense level 30, pursuant to Section 2D1.1 of the U.S. Sentencing Guidelines. The Government agrees to recommend a downward variance to a base offense level of 18 to account for the disparity between powder and crack cocaine. Defendant understands that this recommendation is not binding on the Court or the Probation Office.

In the next paragraph, the government also agreed to recommend a three-level acceptance-of-responsibility reduction pursuant to U.S.S.G. § 3E.1.

That said, in paragraph 6, the government also reserved the right to inform the probation office and the district court of all facts pertinent to the sentencing process. And, important to this appeal, the government reserved the right to recommend any length of sentence, as follows:

> Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, [the government] further reserves the

> right to make any recommendation as to the quality
> *and quantity of punishment.*

(Emphasis added.)

In the plea agreement, Rodriguez acknowledged that (1) any estimate of the probable sentencing range or sentence was merely "a prediction, not a promise, and is not binding on [the government], the probation office or the Court," and (2) any recommendation the government made to the district court "as to sentencing, whether pursuant to this agreement or otherwise" was not binding on the district court. The plea agreement also contained an integration clause stating that there were no other agreements, promises, representations, or understandings between the parties.

At a change-of-plea hearing, the district court accepted Rodriguez's guilty plea to Counts 9 and 14. During the hearing, the district court, *inter alia*, confirmed that Rodriguez had read, discussed with his attorney, and understood the plea agreement.

## C.    Presentence Investigation Report

The probation officer's presentence investigation report ("PSI") recommended: (1) a base offense level of 30, pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(5), based on the 284 grams of crack cocaine attributable to Rodriguez; (2) a 2-level increase under § 2D1.1(b)(1) because Rodriguez possessed a firearm in connection with the crimes; (3) a 2-level increase under § 2D1.1(b)(2) because Rodriguez used or threatened to use violence in connection with the crimes; and (4) a 3-level reduction under § 3E1.1 for acceptance

of responsibility.  With a total offense level of 31 and a criminal history category of II, the PSI recommended an advisory guidelines range of 121 to 151 months' imprisonment.

With respect to Rodriguez's criminal history, the PSI reported Rodriguez's prior federal drug convictions for conspiracy to possess and possession with intent to distribute controlled substances, including cocaine base, in 2014 and his history of violating his federal supervised release terms.  The PSI also noted that Rodriguez had numerous disciplinary infractions while serving his federal sentence.

The PSI listed multiple prior state charges that were "no actioned" or "nolle prossed," including charges of aggravated battery of a pregnant woman.  In addition, the PSI identified recent pending state charges for: (1) failing to obey a police officer; (2) driving without a license; and (3) unlawfully possessing a firearm as a convicted felon, shooting or throwing a deadly missile, and tampering with a witness or victim.  According to the PSI, these last charges pertained to Rodriguez's shooting at a rival suspected drug dealer to protect the trap house.  During the incident, Rodriguez apparently also chased and attempted to runover a person with his vehicle and instead struck a bystander in a wheelchair, causing the bystander a head injury requiring hospitalization.

Rodriguez objected, in relevant part, to the PSI's use of crack cocaine to calculate his offense level.  Specifically, Rodriguez objected to the PSI's recommended base offense level of 30,

pursuant to U.S.S.G. § 2D1.1(c)(5), and total offense level of 31 that resulted in an advisory guidelines range of 121 to 151 months. Rodriguez argued the sentence disparity between powder and crack cocaine was not supported by research and requested a downward variance. Rodriguez pointed out that the government supported his request to use powder cocaine for his guidelines calculations. Rodriguez contended, "based on the agreement of the parties," that his total offense level should be 19, which, with a criminal history category of II, yielded an advisory guidelines range of 33 to 41 months.

## D.    Sentencing

At his sentencing hearing, Rodriguez reiterated his request for a downward variance to eliminate the disparity between powder and crack cocaine, noting the government joined his motion. Specifically, Rodriguez requested "to have the powder cocaine guidelines apply which, in this case, would end up being an offense level 19 with a category two, and I believe it's 33 to 41 months."

The government agreed that, as in the cases of Rodriguez's codefendants, "a downward variance to a one-to-one crack to powder ratio is appropriate." The government confirmed that it (1) was "jointly seeking a downward variance to the guidelines range of 33 to 41 months," and (2) "would then be moving for an upward variance based on several different [§] 3553(a) factors."

The district court opined that the government's "unusual" request for both a downward and an upward variance did not make

sense and questioned whether "the exercise [wa]s worth the time and trouble." Nonetheless, the district court granted the parties' joint motion for a downward variance based on the crack/powder disparity and reduced Rodriguez's total offense level accordingly. This resulted in a total offense level of 19—consisting of a base offense level of 18, a 4-level increase for possessing a firearm and using violence, and a 3-level reduction for accepting responsibility—which yielded an advisory guidelines range of 33 to 41 months.

As for the appropriate sentence considering the § 3553(a) sentencing factors, the government requested an upward variance to a 120-month sentence. The government argued that the disparity-adjusted guidelines range of 33 to 41 months understated the nature and seriousness of the offenses and Rodriguez's history and characteristics. As for Rodriguez's offenses, the government pointed out that Rodriguez: (1) was a member of a violent drug trafficking organization; (2) "shot at an innocent group of people outside their apartment building," instilling fear in the community; (3) "ran over an elderly, wheelchair-bound man with his car" while trying to strike a rival drug dealer; (4) "routinely carried guns"; and (5) offered to sell a firearm to a CI.

The government argued a criminal history category of II understated Rodriguez's criminal history because: (1) this was Rodriguez's second federal drug trafficking conviction in less than a decade; (2) he resumed selling drugs "less than a year after his [prior] supervised release was terminated"; (3) he incurred multiple

serious infractions while in federal prison, including for assault, fighting, possessing drugs, and interfering with security devices; and (4) he violated the terms of his prior supervised release four times. The government further contended that a guidelines sentence would not afford adequate deterrence, given that Rodriguez's prior federal sentence of 48 months had not deterred him from going "right back to a life of crime."

The government also maintained that a guidelines sentence would create an unwarranted sentencing disparity with his codefendants, Herrera and Mendez. At the time of Rodriguez's sentencing, Herrera had received a 180-month sentence and Mendez had received a 102-month sentence. The government argued that Rodriguez's sentence should fall somewhere between Herrera—who was the leader, involved juveniles in the conspiracy, and, like Rodriguez, had a prior federal drug trafficking offense— and Mendez—who did not commit violence as part of his offense conduct and did not have a prior federal drug conviction.

Rodriguez opposed an upward variance as unfair because, based on plea negotiations, both parties expected a sentence between 33 to 41 months at the time of Rodriguez's plea. Rodriguez argued it was "disingenuous" and "inconsistent" for the government now to ask for an upward variance of three times the contemplated advisory guidelines sentence. Rodriguez also stressed that his acts of violence and firearm possession were accounted for in his offense-level increases under the guidelines. Finally, Rodriguez noted that although he and Mendez had "the

same role assessment" under the guidelines, Mendez "only got 20 months above his guidelines" range.

The district court agreed with Rodriguez that it was "unusual" for the government to agree to a downward variance and also to seek an upward variance. The district court observed, however, that it was required to "look at the whole man" and "at what I think is a fair sentence in light of all of the circumstances." The district court emphasized that it also had to consider the other defendants to "make sure that [Rodriguez's] sentence is somewhat in accordance with what I've given other people."

During allocution, Rodriguez apologized for his conduct and asked for a chance to be released before the death of his elderly father, who suffers from Alzheimer's disease.

Stating that it had considered the parties' statements, the PSI with the advisory guidelines range, and the statutory factors, the district court imposed concurrent 120-month sentences on Counts 9 and 14. The district court stated that a sentence "above the advisory guideline[s] range" was "necessary to provide sufficient punishment and deterrence." Rodriguez objected that the upward variance was unwarranted and resulted in an unreasonable sentence. Rodriguez timely appealed.

## II. STANDARD OF REVIEW

We review whether the government breached a plea agreement *de novo* if it was raised below, and otherwise for plain error. *United States v. Malone*, 51 F.4th 1311, 1318 (11th Cir. 2022).

On appeal, the government argues for plain error review, and Rodriguez contends *de novo* review applies. In this regard, the parties dispute whether Rodriguez's protestations at sentencing—that the government was being "disingenuous" and "inconsistent with the position they took in the plea"—sufficiently raised the plea-breach issue in the district court, which affects the applicable standard of review. We need not resolve this question because Rodriguez's plea-breach claim fails even under *de novo* review.

## III. BREACH OF THE PLEA AGREEMENT

Rodriguez claims the government breached the plea agreement by seeking an upward variance under the § 3553(a) factors after it jointly moved for a "downward variance to a base offense level of 18" based on U.S.S.G. § 2D1.1(c)'s disparity between crack and powder cocaine offenses. After reviewing the plea agreement's terms and the government's conduct, we conclude no breach occurred here.[3]

---

[3] Rodriguez's plea agreement contains an appeal waiver. The appeal waiver does not bar Rodriguez's claim that the government breached the plea agreement. *See United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016). And the government has not sought to enforce the appeal waiver as to Rodriguez's sentencing claims. Instead, the government agrees with Rodriguez that his sentence resulted from an upward variance, and thus his appeal of his sentence falls within one of the appeal waiver's exceptions. the government's position, we do not address whether Rodriguez's sentencing claims would otherwise be barred by the appeal waiver. *See United States v. Valnor*, 451 F.3d 744, 745 n.1 (11th Cir. 2006).

## A.    General Principles

"[T]he government breaches a plea agreement when it fails to perform the promises on which the plea was based." *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016).

"Thus, in determining whether the government has breached a plea agreement, we must first determine the scope of the government's promises." *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2016). We interpret any disputed terms in the plea agreement using an objective standard—"whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea." *Id.* (quotation marks omitted).

If the plea agreement is ambiguous, we may consider extrinsic evidence regarding the parties' intent, construing the agreement against the government and so as not to directly contradict an oral understanding reflected in the background of the plea negotiations. *Id.* at 1105-06. However, if the plea agreement's language is unambiguous, we are bound by its meaning. *Id.* at 1106 ("[W]e are limited to the unambiguous meaning of the language in the agreement."). We do not accept a "hyper-technical reading of the written agreement" or "a rigidly literal approach in the construction of the language." *Id.* at 1105 (quotation marks omitted). Additionally, we read the plea agreement as a whole. *See United States v. Rubbo*, 396 F.3d 1330, 1335 (11th Cir. 2005) (rejecting a defendant's interpretation of a term that was inconsistent with other provisions of the plea agreement).

### B.    Rodriguez's Plea-Breach Claim

Rodriguez's plea-breach argument relies on paragraph 7 of the plea agreement.  In that provision, the government promised to recommend a "downward variance to a base offense level of 18," the base offense level if Rodriguez's 284-gram drug quantity was converted to powder cocaine, "instead of a base offense level 30," "to account for the disparity between powder and crack cocaine" in U.S.S.G. § 2D1.1.

There does not appear to be any dispute about the scope of paragraph 7, which clearly had the specific purpose of addressing U.S.S.G. § 2D1.1's disparity in offense levels between powder and crack cocaine offenses.  Rodriguez agrees that in paragraph 7 the government "agreed to 'recommend' a 'variance' from the base offense level of thirty, to a base offense level of 18" resulting in a "corresponding guideline range after this variance" of 33 to 41 months.

The government fulfilled this promise at Rodriguez's sentencing.  Specifically, the government advised the district court "that a downward variance to a one-to-one crack to powder ratio [wa]s appropriate" and joined Rodriguez in asking for "a downward variance to the guideline range of 33 to 41 months," which is the range produced when a base offense level of 18 is used instead of a base offense level of 30.  And the district court granted the parties' joint request and, in determining the appropriate

sentence, considered the parties' agreed-upon advisory guidelines range of 33 to 41 months.[4]

Rodriguez argues that the government nonetheless breached the agreement because paragraph 7 "does not permit" the government to seek an upward variance from the agreed-upon advisory guidelines range of 33 to 41 months. But paragraph 7 contains no such prohibition. Nor does paragraph 7 contain a promise to recommend a particular sentence. *Cf. United States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996) (concluding the government breached its promise to recommend a 10-year sentence when it supported the position in the PSI for a longer sentence). The parties specified in paragraph 7 that the "variance" they agreed to recommend was a change to the base offense level otherwise called for by U.S.S.G. § 2D1.1, not a final sentence below the advisory guidelines range.

More importantly, we must read paragraph 7 in conjunction with the government's reservation of rights in paragraph 6. *See Rubbo*, 396 F.3d at 1335. And paragraph 6 *does* permit the government "to make *any* recommendation as to the . . . quantity of punishment." (Emphasis added.) Thus, the government did not breach the plea agreement by seeking a 120-month sentence based

---

[4] We know the district court used the parties' agreed-upon advisory guidelines range of 33 to 41 months as its reference point because it stated that the 120-month sentence it was imposing was "above the advisory guideline[s] range." A 120-month sentence was *below* the advisory guidelines range of 121 to 151 months the PSI calculated using crack cocaine.

on other 18 U.S.C. § 3553(a) factors, including the seriousness of Rodriguez's drug trafficking offenses, his prior criminal history, and the need for adequate deterrence.

Rodriguez contends that when he pled guilty, he understood that the government would not seek an upward variance from the 33-to-41-month range. But this understanding of the government's promise in paragraph 7 is not objectively reasonable in light of the government's express reservation of the right to recommend any sentence. *See Copeland*, 381 F.3d at 1105 (explaining that disputed terms are interpreted using an objective standard of what the defendant reasonably understood).

In short, when paragraphs 6 and 7 are read together, the plea agreement (1) required the government to recommend a "downward variance" to an advisory guidelines range calculated using the cocaine powder base offense level of 18, and (2) also permitted the government to recommend any quantity of punishment, i.e. any length of sentence. Thus, the plea agreement cannot reasonably be read to implicitly prohibit the government from requesting, based on other sentencing factors, a sentence outside the advisory guidelines range calculated using the agreed-upon base offense level.

Rodriguez complains that allowing the government to seek *both* a downward variance to a specific offense level based on the powder/crack disparity and an upward variance based on other sentencing factors turned the agreement "on its head" and "essentially vitiate[d] any benefit that [he] bargained for." As the

district court observed at sentencing, the parties' agreement is unusual. But we disagree with Rodriguez that he obtained no benefit from it. The obvious objective of paragraph 7 was to eliminate any unfair sentencing disparity between crack and powder cocaine at Rodriguez's sentencing. Rodriguez obtained the benefit provided by paragraph 7 because the district court recognized the disparity between powder and crack cocaine in the guidelines in formulating his sentence. However, the parties' bargain did not restrict the government from making any recommendation as to the quantity of punishment; indeed, the government explicitly preserved that right in paragraph 6. As a result, the government did not breach the plea agreement by recommending a sentence above the guidelines range once the district court accounted for the disparity between powder and crack cocaine in the guidelines.

We are bound by the plea agreement's clear terms and cannot rewrite it to include a promise by the government not to seek a sentence above the 33-to-41-month range that resulted from the agreed-upon change to the base offense level. *See In re Grand Jury Proceedings*, 819 F.2d 984, 987 (11th Cir. 1987) (concluding this Court "cannot rewrite the agreement" to include a promise "that was never agreed upon with specificity" even when the defendant "plausibly misunderstood the plea agreement" and perhaps was unintentionally misled).

### IV. REASONABLENESS OF RODRIGUEZ'S SENTENCE

In reviewing a sentence for reasonableness, we use a two-step process. *United States v. Trailer*, 827 F.3d 933, 935-36 (11th Cir. 2016). First, we ensure the district court committed no significant procedural error, which includes "failing to adequately explain the chosen sentence." *Id.* at 936. Second, we examine whether the sentence is substantively reasonable in light of the totality of the circumstances and the sentencing factors in 18 U.S.C. § 3553(a). *Id.*

Here, Rodriguez contends his 120-month sentence is (1) procedurally unreasonable because the district court failed to explain sufficiently why it imposed an upward variance from the agreed-upon guidelines range of 33 to 41 months, and (2) substantively unreasonable because the district court improperly considered, or alternatively assigned too much weight to, the sentences of codefendants Herrera and Mendez.

### A.    Procedural Reasonableness - Explanation of the Sentence

If a district court imposes a sentence outside the guidelines range, it must orally state "the specific reason" for doing so at the sentencing hearing. *See* 18 U.S.C. § 3553(c)(2). The purpose of this requirement to adequately explain the reason for a variance is "to allow for meaningful appellate review." *United States v. Steiger*, 99 F.4th 1316, 1321 (11th Cir. 2024) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)).

"A sentence is procedurally unreasonable if the district court fails to adequately explain the sentence, including any variance

from the guidelines range." *United States v. Oudomsine*, 57 F.4th 1262, 1265 (11th Cir. 2023) (discussing 18 U.S.C. § 3553(c)(2)). However, where, as here, the defendant fails to object at sentencing to the adequacy of the district court's explanation, our review is for plain error. *Steiger*, 99 F.4th at 1324.

Here, we find no error, plain or otherwise, in the district court's explanation for the upward variance.[5]  During the sentencing hearing, the district court explained that despite granting the parties' request for a "downward variance" to a guidelines range of 33 to 41 months, it considered "the whole defendant," including his current offenses, his background, and the sentences given to Rodriguez's codefendants, in choosing the sentence.  The district court also stressed that the range originally calculated in the PSI was "very close to" what it thought was the appropriate sentence for Rodriguez in light of "all of the circumstances."  In imposing the 120-month sentence, the district court stated it had considered the parties' arguments, the PSI, and the § 3553(a) sentencing factors and explained that a sentence "above the advisory guideline range" was "necessary to provide sufficient punishment and deterrence."

The district court's explanation for the upward variance is sufficiently clear to allow for meaningful appellate review and does

---

[5] Rodriguez raises no other procedural error as to his sentence.  In addition, the parties agree, and thus we assume *arguendo*, that the pertinent advisory guidelines range is the 33-to-41-month range that resulted from the parties' agreed-upon change to Rodriguez's base offense level.

not violate § 3553(c)(2).  To the extent Rodriguez argues the reasons given were not a sufficient justification for the extent of the upward variance, that is really a challenge to the substantive reasonableness of the variance.  *See, e.g., United States v. Curtin*, 78 F.4th 1299, 1311 (11th Cir. 2023).  Rodriguez has not shown his sentence is procedurally unreasonable.

## B.    Substantive Reasonableness

We review the substantive reasonableness of a sentence for an abuse of discretion in light of the § 3553(a) factors and the totality of the circumstances.[6]  *Oudomsine*, 57 F.4th at 1266.  The party challenging the sentence, here Rodriguez, bears the burden of establishing that it is unreasonable.  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

At sentencing, the district court is not required to address each § 3553(a) factor separately.  *Id.* at 1265.  The district court may attach great weight to one § 3553(a) factor over others, and the weight it assigns to any particular factor is within its sound

---

[6] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed education or vocational training or medical car; (6) the kinds of sentences available; (7) the sentencing guidelines range; (8) pertinent policy statements of the sentencing commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

discretion. *Id.* at 1254. However, a sentence may be unreasonable if the district court gives significant weight to an improper or irrelevant factor. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc).

The district court has wide discretion to impose an upward variance based on the § 3553(a) factors. *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022). If the district court determines that an upward variance is warranted, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. While we may consider the extent of the variance, we do not require extraordinary circumstances to justify a sentence outside the advisory guidelines range or presume that such a sentence is unreasonable. *Id.* at 47; *Irey*, 612 F.3d at 1186-87.

Ultimately, we will vacate a defendant's sentence as substantively unreasonable only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (quotation marks omitted).

Here, Rodriguez contends his sentence is substantively unreasonable because the district court "relied on" an irrelevant or improper factor when it considered the sentences it imposed on codefendants Herrera and Mendez. But this Court's precedent has not established a categorical ban on considering codefendants' sentences, only a prohibition on assuming that codefendants are

similarly situated.  *See United States v. Cavallo*, 790 F.3d 1202, 1237 (11th Cir. 2015); *United States v. Chotas*, 968 F.2d 1193, 1197-98 (11th Cir. 1992).

This general rule makes sense given that § 3553(a)(6) seeks to avoid only *unwarranted* sentencing disparities, and a defendant is not entitled to either a lighter or a harsher sentence merely because a codefendant received that sentence.  That said, a district court has discretion to consider the sentences imposed on codefendants in order to avoid an unwarranted disparity between similarly situated codefendants and to adjust a sentence to reflect differences between codefendants, such as their respective roles in the offense or their criminal histories.

We likewise reject Rodriguez's argument that his sentence is unreasonable because the district court gave undue weight to his codefendants' sentences.  To be sure, the district court was concerned with ensuring Rodriguez's sentence was not out of line with his codefendants' sentences.  But the court also stressed that it had considered "all of the circumstances" and had looked at Rodriguez as "the whole defendant" including "the offense of which he stands convicted, his background, [and] what he's done." To that end, the government's arguments in support of a sentence between those of Herrera and Mendez were careful to highlight both the similarities and the differences between Rodriguez, Herrera, and Mendez.

Rodriguez argues he was less culpable than Mendez. Mendez was sentenced for possession of a firearm, and Rodriguez

was not, but the PSI makes clear that Rodriguez also possessed *and used* a firearm during the drug trafficking conspiracy, as he was linked to two different shootings in the area around the trap house. The district court was permitted to consider Rodriguez's conduct, even though it was uncharged, in fashioning his sentence. *See United States v. Watts*, 519 U.S. 148, 149 (1997). Moreover, the government pointed out at sentencing that Rodriguez, like Herrera (but not Mendez), already had a federal drug trafficking conviction.

Additionally, the record supports the district court's cited reasons for imposing such a sizable upward variance—providing just punishment and deterrence. It is undisputed that Rodriguez: (1) was part of a drug distribution conspiracy whose members regularly carried firearms in furtherance of their objectives; (2) was able to quote a price for a firearm when asked by a government CI; (3) twice discharged a firearm to protect the gang's territory from rival drug dealers; and (4) struck and injured a wheelchair-bound pedestrian with his car while trying to run over someone else. *See United States v. Bennett*, 472 F.3d 825, 832-33 (11th Cir. 2006) (providing that district courts may rely on any facts in the PSI to which the defendant did not object with specificity and clarity). In other words, Rodriguez's drug trafficking activities included extremely dangerous conduct and serious harm to others. Further, Rodriguez returned to drug trafficking less than a year after being released from federal custody, indicating his prior 48-month federal sentence had been wholly inadequate to deter him.

Finally, Rodriguez's 120-month sentence was well below the 20-year statutory maximum for his offenses, which is another indication it is reasonable. *See United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020). Under the circumstances, we cannot say the district court's decision to impose a 120-month sentence was an abuse of discretion.

**AFFIRMED.**