[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12247

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RONALD RIECO SHANKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:23-cr-00018-AW-MAL-1

_____

Before JILL PRYOR, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Ronald Shanks appeals his sentence of 40 months' imprisonment for dealing firearms without a license and for making false statements during the purchase of firearms. First, Shanks argues that the district court erred in finding that the government did not breach the plea agreement because the government sought guidelines enhancements based on conduct that was not included in the stipulation of facts and that was related to charges it agreed to dismiss. Second, Shanks argues that the district court erred in considering conduct related to his dismissed charges because doing so violated his due-process rights and contradicted the principles underlying U.S.S.G. § 1B1.3(c). Third, Shanks argues that the district court clearly erred in finding that he knowingly sold guns to a felon on the ground that the district court relied on uncorroborated hearsay statements. After careful review, we affirm.

## I.

We review *de novo* whether the government has breached a plea agreement. *United States v. Al-Arian*, 514 F.3d 1184, 1191 (11th Cir. 2008).

Plea bargains are generally interpreted like contracts. *United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990). "The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." *United States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996).

We analyze claims of a breach of the plea agreement according to the defendant's reasonable understanding at the time of entering the plea. *United States v. Rewis*, 969 F.2d 985, 988 (11th Cir. 1992). We apply an objective standard to "decide whether the government's actions are inconsistent" with what the defendant could have reasonably understood from the plea agreement. *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004) (quotation marks omitted). We do not apply a "rigidly literal approach" in construing the agreement. *Id.* (quotation marks omitted). When a plea agreement is breached, we may either remand the case for resentencing before a different judge or permit the defendant to withdraw the guilty plea. *United States v. Hunter*, 835 F.3d 1320, 1329 (11th Cir. 2016).

Section 6B1.4 of the Sentencing Guidelines provides that a plea agreement "may be accompanied by a written stipulation of facts relevant to sentencing," which "shall [ ] set forth the relevant facts and circumstances of the actual offense conduct" and "the reasons why the sentencing range resulting from the proposed agreement is appropriate." U.S.S.G. § 6B1.4(a)(1), (3). Section 6B1.4 also provides that "[t]o the extent that the parties disagree about any facts relevant to sentencing, the stipulation shall identify the facts that are in dispute." *Id.* § 6B1.4(b). However, "[t]he court is not bound by the stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing." *Id.* § 6B1.4(c). In other words, stipulations may aid, but do not supplant, the sentencing court's fact-finding. *United States v. Forbes*, 888 F.2d 752, 754 (11th Cir. 1989).

As the Supreme Court stated in *Erlinger v. United States*, the Fifth and Sixth Amendments ensure that a judge's authority to punish a defendant must derive wholly from, and remain always controlled by, the jury and its verdict. 602 U.S. 821, 831 (2024) (citing *Blakely v. Washington*, 542 U.S. 296, 306 (2004)). This principle applies when a judge seeks to issue a sentence that exceeds the maximum penalty authorized by the defendant's guilty plea or seeks to increase the minimum punishment authorized by that plea. *Id.* at 833. Thus, elements of a crime must be charged in an indictment and proved beyond a reasonable doubt, but facts at sentencing may be proved to a judge by a preponderance of the evidence so long as the judge-found sentencing factors do not shift the statutory range of sentences a defendant may receive. *United States v. O'Brien*, 560 U.S. 218, 224 (2010).

Here, Shanks contends that the government breached the plea agreement by introducing evidence of Shanks's conduct related to Counts 3, 5, 7, and 9 of the indictment that went beyond the parties' stipulations of fact under § 6B1.4. But, as we have said, "[u]nder the sentencing guidelines, the district court is not bound by [the parties'] stipulations of fact, 'but *may* with the aid of the presentence report, determine the facts relevant to sentencing.'" *Forbes*, 888 F.2d at 754 (quoting § 6B1.4(d) (emphasis added)). So Shanks is mistaken when he says he was "entitled to rely on" the facts included in the stipulation, to the extent that he is suggesting that the district court should have been bound by the parties' stipulations of fact.

Additionally, Shanks's interpretation of the plea agreement is not reasonable: There is no clause in the plea agreement in which the government agreed to omit conduct contained in Counts 3, 5, 7, and 9 from conduct relevant to determining the guideline range. On the contrary, the plea agreement states that "the sentence to be imposed is left solely to the discretion of the District Court," whose "discretion in imposing [a] sentence is limited only by the statutory maximum sentence and any mandatory minimum sentence prescribed by statute for the offense." The parties also agreed that the district court "is not limited to consideration of the facts and events provided by the parties," and that "either party may offer additional evidence relevant to sentencing issues." We thus conclude that there is no written agreement supporting Shanks's argument against introducing relevant conduct during sentencing.

Moreover, 18 U.S.C. § 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." In this case, evidence of Shanks's conduct did not affect the range of penalties he faced, and Shanks had notice both of the evidence that would be introduced and of the fact that the government could introduce additional evidence at sentencing. We thus conclude that the district court did not err in determining that the government did not breach the plea agreement.

## II.

Next, Shanks argues that the district court violated the "rationale" underlying U.S.S.G. § 1B1.3 as well as his due-process rights when it considered conduct related to his dismissed charges.

When reviewing a sentence for procedural reasonableness, we consider legal issues *de novo* and review factual findings for clear error. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). Procedural errors include failing to calculate (or improperly calculating) the guideline range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. *United States v. Trailer*, 827 F.3d 933, 936 (11th Cir. 2016). We specifically review *de novo* whether a factor that the district court considered was improper. *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008).

Under § 2K2.1, a defendant who is convicted under 18 U.S.C. § 922(a)(6) and who "committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person" has a base offense level of 14. U.S.S.G. § 2K2.1(a)(6)(C). Under the 2021 version of that guideline, a defendant who engaged in firearms trafficking was subject to a four-level enhancement. *Id.* § 2K2.1(b)(5) (2021). Application Note 13 to that subsection stated that it applied, regardless of whether anything of value was exchanged, if the defendant transferred two or more firearms to, or received them from, another individual and if the defendant knew the possession

or use of that firearm by the individual would be unlawful. *Id.*, § 2K2.1(b)(5), comment. (n.13) (2021). In 2023, § 2K2.1(b)(5) was amended to provide that a defendant who sells or otherwise transfers a firearm to a prohibited person is subject to a two-level enhancement. *Id.* § 2K2.1(b)(5)(B)(i)(I) (2023); *see also id.*, App. C., Amend. 819 ("Amendment 819").

In calculating a defendant's total offense level, the sentencing court must consider all "relevant conduct" that is attributable to the defendant. *United States v. Maddox*, 803 F.3d 1215, 1221 (11th Cir. 2015). Section 1B1.3 defines relevant conduct as "[a]ll acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and all harm that resulted from those acts or omissions. U.S.S.G. § 1B1.3(a)(1)(A), (a)(3). Relevant conduct includes that which forms part of a common scheme with the offense of conviction through a shared purpose. *United States v. Valladares*, 544 F.3d 1257, 1268 (11th Cir. 2008).

A recent guidelines amendment, added in November 2024, created subsection (c) of § 1B1.3, which provides that relevant conduct at sentencing "does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." U.S.S.G. § 1B1.3(c); *Id.*, App. C., Amend. 826 ("Amendment 826"). Official commentary to that amendment states that "[a]cquitted conduct is unique, and this amendment does not comment on the use of uncharged, dismissed, or other

relevant conduct as defined in § 1B1.3 for purposes of calculating the guideline range." United States Sentencing Commission Notice, 89 Fed. Reg. 36,855 (May 3, 2024).

The Supreme Court has also explained that the "law attaches particular significance to an acquittal." *United States v. DiFrancesco*, 449 U.S. 117, 132 (1980) (quotation marks omitted) (noting that an acquittal prevents retrial under the Double Jeopardy clause). In *McClinton v. United States,* the Supreme Court denied *certiorari* in an appeal raising the issue of whether acquitted conduct may be used to enhance a defendant's sentence, stating that the Commission had announced that it would address the issue but that it would step in if the Commission did not act. 600 U.S. ----, 143 S. Ct. 2400, 2403 (2023). It explained that juries are meant to function as a check limiting the power of the state to punish. *Id.* at 2401. Thus, it explained, acquittals have special weight, distinct from conduct that was not charged or passed upon by a jury, because the jury has determined that the state does not have the authority to punish the alleged misconduct. *Id.* at 2401–02.

On direct appeal, in reviewing the district court's application of the Guidelines, we apply the version of the Guidelines in effect on the date of the sentencing hearing. *United States v. Jerchower*, 631 F.3d 1181, 1184 (11th Cir. 2011). We will consider clarifying amendments to the Guidelines but will not review substantive changes to the Guidelines or apply them retroactively. *Id.* "An amendment that alters the text of the Guideline itself suggests a substantive change . . . ." *Id.* at 1185.

In this case, § 1B1.3(c) was not in effect at the time of Shanks's sentencing on June 25, 2024, so it likely does not apply retroactively to Shanks's case. *See United States v. Handlon*, 97 F.4th 829, 833 (11th Cir. 2024) (holding that we may not retroactively apply an amendment to the Guidelines if it is a "substantive" amendment); *United States v. Jerchower*, 631 F.3d 1181, 1185 (11th Cir. 2011) ("An amendment that alters the text of the Guideline itself suggests a substantive change."); *United States v. Summers*, 176 F.3d 1328, 1331 (11th Cir. 1999) ("[A]lteration of actual Guideline language strongly suggests that a substantive change was being made."). In any event, § 1B1.3(c) is inapplicable because Shanks was never acquitted of any conduct or crime here. Indeed, Shanks concedes that acquitted conduct is not equivalent to dismissed conduct, but he insists that his sentence should still be vacated and that we should remand for resentencing without application of the dismissed conduct because "[t]he reasons for excluding dismissed conduct from consideration as relevant conduct are every bit as strong as those excluding acquitted conduct." We disagree. As the Supreme Court has explained, acquitted conduct is unique and "distinguish[able] . . . from conduct that was never . . . passed upon by a jury." *McClinton*, 143 S.Ct. at 2402. We thus decline to vacate Shanks's sentence based on § 1B1.3(c).

As for Shanks's due-process argument—that the district court "violated [his] Fifth and Sixth Amendment rights to due process" in considering conduct related to Shanks's dismissed charges—we disagree. The district court's consideration of evidence that Shanks knowingly transferred firearms to prohibited

people did not shift the range of penalties authorized by his guilty plea, and the conduct was relevant to his criminal scheme.  And Shanks offers no binding case law demonstrating that his sentence was imposed in violation of the Fifth and Sixth amendments.

## III.

Finally, Shanks argues that the district court clearly erred in finding that he knowingly sold guns to a felon because the district court relied on uncorroborated hearsay statements.  Specifically, Shanks takes issue with the fact that the district court relied on a government case agent's testimony that C.T.—who purchased firearms from Shanks—told the agent that he told Shanks that "he had previously been in prison and that he couldn't purchase firearms himself."

The factual findings that guide the district court's application of the Guidelines are reviewed for clear error if the issue is preserved.  *United States v. Bradley*, 644 F.3d 1213, 1283 (11th Cir. 2011).  A fact is clearly erroneous if, after reviewing the evidence, we are left with "a definite and firm conviction" that the district court erred.  *Rothenberg*, 610 F.3d at 624 (quotation marks omitted).  However, a factual finding cannot be clearly erroneous when the factfinder is choosing between two permissible views of the evidence.  *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010).

The district court may base its factual findings on, among other things, facts admitted in the defendant's guilty plea, undisputed statements in the presentence investigation report, or

evidence presented at the sentencing hearing. *United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021). Further, the court "may make reasonable inferences from the evidence." *United States v. Green*, 981 F.3d 945, 953 (11th Cir. 2020). The evidence the court relies on "may include specific circumstantial evidence, but the district court may not speculate about the existence of a fact that would result in a higher sentence." *United States v. Baldwin*, 774 F.3d 711, 727 (11th Cir. 2014) (quotation marks and citation omitted).

A defendant has a due process right not to be sentenced based on false or unreliable information. *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010). To prevail on a sentencing challenge based on unreliable evidence, a defendant must show "(1) that the challenged evidence is materially false or unreliable and (2) that it actually served as the basis of the sentence." *Id.* (addressing defendant's argument that double hearsay testimony of two felons lacked sufficient indicia of reliability).

When a defendant challenges one of the factual bases of his sentence, the government has the burden of establishing the disputed fact by a preponderance of the evidence. *United States v. Little*, 864 F.3d 1283, 1290 (11th Cir. 2017). This burden must be satisfied with reliable and specific evidence. *United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009). The preponderance-of-the-evidence standard simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence. *United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004).

The sentencing court may consider any information with sufficient indicia of reliability. *See* U.S.S.G. § 6A1.3(a).

> A sentencing court may consider any evidence, regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that (1) the evidence has sufficient indicia of reliability, (2) the court makes explicit findings of fact as to credibility, and (3) the defendant has an opportunity to rebut the evidence.

*United States v. Hernandez*, 906 F.3d 1367, 1369 (11th Cir. 2018). In reviewing the district court's factual determinations, we grant its credibility determinations at sentencing "substantial deference." *United States v. Plasencia*, 886 F.3d 1336, 1343 (11th Cir. 2018) (quotation marks omitted). We have specifically upheld enhancements solely based on hearsay under these considerations. *See United States v. Zlatogur*, 271 F.3d 1025, 1031 (11th Cir. 2001) (determining that hearsay declarations were sufficiently reliable because the district court found the testifying witness relating the declarations credible, and other evidence corroborated the testimony). A district court's failure to make explicit findings about the reliability of a witness's hearsay testimony "does not necessarily require reversal or remand where the reliability of the statements is apparent from the record." *United States v. Docampo*, 573 F.3d 1091, 1098 (11th Cir. 2009) (quotation marks omitted).

Here, we conclude that the district court did not clearly err in determining that Shanks knew C.T. was a felon when Shanks

sold C.T. firearms because it was authorized to rely on C.T.'s hearsay statements to law enforcement, which were corroborated by text messages between Shanks and C.T.  As in *Zlatogur*, the district court found that the agent's testimony was credible, and there was ample evidence to corroborate his testimony.  *See Zlatogur*, 271 F.3d at 1031.  Specifically, text messages showed Shanks asking C.T. to provide him with names other than C.T.'s own to put on paperwork after C.T. had texted Shanks looking to buy firearms, including five nine-millimeter Glocks.  Given that this evidence bore sufficient indicia of reliability, we cannot conclude that the district court clearly erred when it considered information at sentencing that may not have been admissible at trial.

★    ★    ★

For these reasons, we affirm the judgment and sentence entered by the district court.

**AFFIRMED.**